## DAVIS v. PORT ARTHUR CHANNEL & DOCK CO.

(Circuit Court of Appeals, Fifth Circuit. May 18, 1898.)

No. 699.

1. CORPORATIONS—TEXAS CHANNEL AND DOCK COMPANIES—POWERS.

A channel and dock company organized under Sayles' Ann. St. (Tex.) 1897, §§ 721, 722, and authorized to construct a channel "across, along, through, or upon" certain waters within the jurisdiction of the states, is not restricted to a route through such waters, but may· construct its channel along the borders of the same.

2. INJUNCTION PENDENTE LITE—CONDEMNATION PROCEEDINGS.

An application for an injunction pendente lite is addressed to the sound discretion of the court, and will be granted only to prevent irreparable injury; hence a corporation having instituted proceedings for the condemnation of land, and a controversy having arisen as to the value thereof, an injunction will not issue to restrain the corporation from entering upon the land until the termination of the condemnation suit, where the corporation has given bond in a sum sufficient to cover all damages, and the whole controversy appears to be rather an attempt to defeat the purpose of the corporation than a simple contest as to the value of the land.

Appeal from the Circuit Court of the United States for the Eastern District of Texas.

This is an application by the appellant, Davis, in the United States circuit court for the Eastern district of Texas at Beaumont, for an injunction restraining the appellee, the Port Arthur Channel & Dock Company, its agents and employés, from entering or remaining upon two certain tracts of land in which the appellant owns an undivided interest, and from the prosecution of any work or construction on any part thereof, or from doing any act in jeopardy of plaintiff's right and peaceable possession of said premises pending the adjudication of the rights of the plaintiff and the defendant in a common-law cause in said court, in which the defendant company was seeking to condemn said land for the purpose of cutting a channel through it. Plaintiff's land is described as an undivided one-eighth interest in divisions A and 6 of a tract of land on the west side of and upon the waters of Sabine Lake and Sabine Pass, known as the "Dennis Gahagan League" of land. The common-law case referred to is a proceeding which was originally commenced in the county court of Jefferson county, Tex., by the appellee, to condemn said land for the purposes of said channel company, both as to the construction of its channel and for a right of way on each side of it. That suit was removed to the United States circuit court at Beaumont after the commissioners appointed by the county judge for that purpose had awarded damages to appellant, and the amount had been paid into the county court, and the appellant had filed his objections to the award, and the proceedings had become a case in court for trial as in other causes, and this application was filed after said removal. The grounds of the application are, briefly, as follows: "(1) The charter of the Port Arthur Channel and Dock Company is void, because it authorizes the construction of its channel from the waters of the Gulf of Mexico, at Sabine Pass, along and across Sabine Lake to a point at or near the town of Port Arthur; and Sabine Lake is a body of water not within the jurisdiction of the state of Texas, and said charter is not, therefore, authorized by the constitution and laws of the state of Texas nor of the United States, but in contravention thereof. (2) Said charter contemplates the construction of a channel through the waters of Sabine Lake, not to enter the mainland until it reaches a point at or near the town of Port Arthur, whereas the route of the channel, as designated by said company, does not touch Sabine Lake, but enters the mainland before reaching said lake, and continues through the mainland until it reaches Taylor's Bayou, a navigable stream, and, after crossing the same, extends to the town of Port Arthur. (3) The usefulness of Taylor's Bayou as a navigable stream would be destroyed by cutting the channel into it, as its waters would be diverted from their natural

course into the Port Arthur channel, and its depth would be reduced, and no permit had been obtained from the United States government for the construction of the channel. (4) There was no necessity for cutting the channel where the company proposed to construct it—between Taylor's Bayou and its southern terminus—for the purpose of reaching a safe place for wharfs and docks; that Port Arthur is nine miles in a northerly direction from where the channel enters the mainland, and the entire property between the two points is comparatively level, the height at Port Arthur being about the same as at the southern terminus of the channel. (5) In the condemnation suit pending between the parties hereto the commissioners had reported the damages of appellant by reason of the condemnation of his land to be $281.60, and appellant had filed exceptions to said award, and these objections were still pending, and had not been determined, and the cause stood for trial de novo, and the award had been set aside and held for naught, and appellee had no right to enter upon said land until said proceedings should be finally determined." Irreparable injury to appellant's land was alleged, and an injunction was prayed for as already stated. A restraining order was granted by Hon. A. P. McCormick in terms conforming to the prayer for injunction, to continue until the further order of said circuit court or one of its judges, and the appellee was directed to appear before said circuit court at Galveston on February 28, 1898, to show cause, if any it could, why the preliminary injunction should not be granted. On the day named the appellee appeared, and filed his reasons why the injunction should not be granted, substantially as follows: "(1) That the bill showed no equity on its face. (2) The charter attached to the bill showed the right of the company to condemn the land. (3) Bill showed adequate remedy at law through the condemnation proceedings, and did not allege insolvency of defendant. (4) Charter showed defendant worth a half million dollars, and no irreparable injury was shown, and all questions in the case could be tried in the condemnation suit. (5) The bill did not show that the plaintiff had land on Taylor's Bayou, and, if it did, the United States government only could object to any injury done to that stream. (6) The amount assessed by the commissioners as damages to plaintiff's land had been deposited in court for the benefit of plaintiff. (7) Res adjudicata in this: that in equity No. 1, in the United States circuit court at Beaumont, the matters set up in plaintiff's bill had been adjudicated against him. (8) Plaintiff's land was of but little value, and had never been used by him for any purpose. (9) The defendant had a permit from the United States government to cut its channel through 200 feet of the water of Sabine Pass to where it enters the mainland. (10) Defendant admitted its incorporation as charged: also, that the legal title to the land was in plaintiff; the filing of condemnation proceedings; award as stated; alleged payment of that amount into court; admitted the removal of the cause to the United States court as charged: the filing of objections to the award by plaintiff; that the channel would cross Taylor's Bayou; but denied that that stream was navigable, or that injury would result from cutting the channel into it; alleged conspiring of plaintiff with Kountze Bros. to defeat the construction of the canal; and denying other allegations of the bill; asked to give bond to pay any damages that might be assessed in the condemnation suit, and to proceed with the construction of the canal through plaintiff's land." The case was heard, the preliminary injunction prayed for was refused, and the defendant permitted to proceed with the work of digging the channel upon giving a bond in the sum of $5,000 conditioned as asked by defendant.

A. H. Willie, for appellant.

Hal. W. Greer and R. A. Greer, for appellee.

Before PARDEE, Circuit Judge, and SWAYNE and PARLANGE, District Judges.

PARDEE, Circuit Judge, after stating the facts as above, delivered the opinion of the court.

No written opinion having been given in the court below, the appellant has assigned errors covering all possible views and rulings of

the judge a quo, but from the view we take of the case the right of the appellant to a preliminary injunction depends upon two propositions, and the first is: Does the charter of the appellee authorize it to construct its channel along the route proposed, and thereby to pass through and over the appellant's land, and condemn so much of it as may be necessary for the purposes of the said channel? The appellee obtained its charter under article 721, Rev. St. Tex. 1895, and article 722 of the same, as amended March 1, 1897 (1 Sayles' Ann. St. 1897, p. 289 et seq.), as follows:

## "Chapter 14.

### "Channel and Dock Corporations.

"Art. 721. This title shall embrace and include the creation of private corporations for the purpose of constructing, owning, and operating deep-water channels from the waters of the Gulf of Mexico along and across any of the bays on the coast of this state to the mainland for the purpose of navigation and transportation, and for the construction, owning and operating docks on the coast of this state for the protection and accommodation of ships, boats and all kinds of vessels for navigation; and their cargoes. Acts 1887, p. 91.

"Art. 722 (644b) Channel Corporations; Added Powers. Every such channel corporation shall, in addition to the powers herein conferred, have power:

"(1) To cause such examination and survey for its proposed channel to be made as may be necessary to the selection of the most advantageous route for such purpose by its officers, agents or servants to enter upon any of the waters of such bays and upon any of the lands of this state, or of any person.

"(2) To take and hold such voluntary grant of real estate and other property as shall be made to it to aid in the construction and maintenance of its deep water channel and works pertinent thereto.

"(3) To construct its channel across, along, through, or upon, any of the waters of the bays within the jurisdiction of this state, and so far into the mainland as may be necessary to reach a place for its docks that will afford security from cyclones, storms, swells and tidal waves with such depth as may suit its convenience and the wants of navigation not less than five feet, and a width of not less than forty feet.

"(4) To furnish to vessels and boats adapted to the purpose facilities for navigating in and along the entire length of its channel, and to charge and collect a toll therefor, to be prescribed and established by its by-laws, not to exceed one per cent. per barrel bulk of the capacity of each vessel for each mile of the length of its channel used by the vessel going either way.

"(5) To borrow such sums of money as may be necessary for constructing, finishing, or operating its channel, and to issue and dispose of its bonds for any amount so borrowed and to mortgage its corporate property and franchises to secure the payment of any debt contracted for the purpose aforesaid: provided, the damages for any property appropriated by such corporation shall be assessed and paid for as is provided for in the case of railroads.

"(6) To enter upon and condemn and appropriate any lands of any persons or corporation that may be necessary for the uses and purposes of such channel corporation, the damages for any property thus appropriated to be assessed and paid for in the same manner as provided by law in the case of railroads: provided that no damages shall be assessed against or paid by it for any portion of the route of the channel embraced within and covered by the waters of any bay or lake on the coast of this state, nor for any portion of any island belonging to the state that may be requisite and necessary to the construction and successful operation of its channel: and provided, further, that its right of way shall not be less than the actual width of its channel, nor more than seven hundred feet in width on each side of its channel: provided, that when the land sought to be condemned under this chapter is arable land, such right of way shall not extend further than six hundred feet on each side of the channel from the edge or boundary of said channel."

An inspection of these statutes, particularly in connection with the following sections of the same chapter in relation to dock and channel corporations, shows that the right to expropriate the appellant's land for the purposes of channel cannot be questioned, if the route of the channel is laid out within the law, and in accordance with its charter. The charter of the company purports to authorize it to construct, own, and operate a deep-water channel from the waters of the Gulf of Mexico at Sabine Pass, along and across Sabine Lake, on the coast of Texas, to a point on the mainland at or near the town of Port Arthur, in the county of Jefferson, in the state of Texas, and to control, own, and operate docks along the coast of the state of Texas, at or near said channel, for the protection and accommodation of ships, boats, and all kinds of vessels for navigation and their cargoes, with full authority to exercise all of the powers and enjoy all the rights and privileges prescribed by chapter 14 of title 21 of the Revised Statutes of Texas of 1895, and all acts amendatory thereof and supplemental thereto. The charter follows the language of the Revised Statutes of 1895, except that in the Revised Statutes power is given to construct channels from the waters of the Gulf of Mexico along and across any of the bays on the coast of this state, and the charter authorizes the construction to begin at the waters of the Gulf of Mexico at Sabine Pass, and to run along and across Sabine Lake to a point in the mainland at or near the town of Port Arthur. The channel actually laid out by the company, and the location given it, begins at Sabine Pass, several miles above the Gulf, and without touching the waters of Sabine Lake, and going along and across that lake to the mainland near Port Arthur, goes directly into the mainland within 200 feet of its beginning point, several miles from the town of Port Arthur, and runs the rest of its route through the mainland, bordering on and along Sabine Lake till it reaches Port Arthur. The land bordering upon Sabine Lake, and particularly the land of the appellant through which the channel is to be constructed, is open, unimproved, low, flat, salt marsh, unfit for cultivation of any kind, and practically in high water the borders of the lake are not well defined. Assuming that the beginning of the proposed channel in the waters of Sabine Pass is equivalent to beginning at the Gulf of Mexico, the proper location of the channel therefrom seems to depend upon the force and effect of the words "along and across" in article 721, and "across, along, through, or upon" in paragraph 3, § 722. "Across" the waters of any bay would seem to warrant the locating of a channel in and through any bay in any direction. "Across, through, or upon" the waters of any bay certainly warrants a channel in any direction. "Along the waters of any bay" does not necessarily mean over, in, or through the waters, and may well mean along the borders of any bay; and in the statutes under consideration it seems to mean that or nothing. Considering the object of the statutes and the purposes of the appellee company, the narrow construction contended for is not admissible.

Concluding, as we do, that the charter of the appellee company authorizes it to construct its channel along the route proposed, and

thereby to pass through and over appellant's land, and by proper proceedings expropriate the said land, the next proposition is: Under the peculiar circumstances of this case, is the appellant entitled to an injunction pendente lite to restrain the appellee company from entering upon the said land for the purpose of digging its channel until the final determination of the expropriation suit, and the payment of the damages awarded? Section 17 of article 1 of the Texas constitution reads as follows:

"No person's property shall be taken, damaged, destroyed or applied to public use without adequate compensation being made, unless by the consent of such person; and when taken, except for the use of the state, such compensation shall be first made, or secured by a deposit of money, and no irrevocable or uncontrollable grant of special privileges or immunities shall be made, but all privileges and franchises granted by the legislature, or created under its authority, shall be subject to the control thereof."

The articles of the Revised Statutes of 1895 of Texas bearing on the question read as follows:

"Art. 4463.—When the said commissioners shall have assessed the damages they shall reduce their decision to writing, stating therein the amount of damages due the owner of such real estate, if any be found to be due, and shall date the same and sign it, and shall file the said assessment, together with all other papers connected with the case, with the county judge without delay."

"Art. 4468.—If either party be dissatisfied with the decision of such commissioners he may, within ten days after the same has been filed with the county judge, file his opposition thereto in writing, setting forth the particular cause or causes of his objection, and thereupon the adverse party shall be cited, and said cause shall be tried and determined as in other civil causes in said court.

Art. 4469.—If no objections are filed to such decision within the time prescribed in the preceding article, the county judge shall cause the said decision to be recorded in the minutes of said court, and may issue the necessary process to enforce the same."

"Art. 4471.—In no case shall such corporation be entitled to enter upon and take the property condemned without first having paid whatever amount of damages and costs may have been awarded or adjudged against it."

Construing these statutes, the Texas supreme court, in Gulf, C. & S. F. Ry. Co. v. Ft. Worth & R. G. Ry. Co., 86 Tex. 537, 546, 26 S. W. 54, 60, said:

"Under the law the award could not be made the judgment of the court until after the expiration of ten days from the time it was returned into court, and during that time plaintiff, by filing his objections to it, would have been entitled to a trial de novo before a jury, by which objections it would have set aside the award, and thus have secured ample protection before the county court, with the right of appeal to the court of civil appeals if its rights were not fully protected by the judgment of the county court."

In Travis Co. v. Trogdon, 88 Tex. 302, 31 S. W. 358, the court held, in effect, that where the condemnation was for the use of the state the statute might provide for entry upon payment of the assessment made by the commissioners, thereby inferentially holding the converse to be true, i. e. if the condemnation is for the benefit of private corporations, and not of the state, payment of the amount awarded will not authorize the condemning party to occupy and use the land.

In Ditch Co. v. Hudson, 85 Tex. 587, 22 S. W. 398, the commissioners had reported, and the amount of their award had been paid into

court by the condemning party, at the time the owner applied for injunction to prevent entry upon his land, and the court held that an injunction to prevent entry upon the land should be granted, to continue till the condemnation proceedings were finally determined.

These decisions of the highest court of the state of Texas on the construction of the constitution and expropriation statutes of the state show that the appellee company had no right to enter upon the lands of the appellant for the purpose of digging its canal until compensation had been made, or the damages had been judicially assessed, and the amount thereof deposited; and that the deposit made by the appellee company in the county court of Jefferson county upon the award made in that court, and afterwards vacated, is without value; and it may be conceded that such will be the decree in the instant case on final hearing. This, however, does not meet the question in hand. The present application is for an injunction pendente lite to restrain the appellee company from committing trespass, and to compel the appellee to desist from further trespassing, and to abandon the digging of its channel pending and until the final determination of the litigation. Such injunctions are issued in the circuit court in the sound discretion of the chancellor, to prevent irreparable injury pending the final determination of the rights of the parties. It is only recently such discretion could be reviewed on appeal, and the effect of the appeal is merely to substitute the judgment and discretion of the appellate court for the judgment and discretion of the circuit court.

The circumstances of this case are peculiar. The case does not show a simple case of contest as to the value of certain lands to be expropriated for a canal; it rather shows an attempt, of course within the party's right, to defeat entirely the construction of the canal; and the grounds of attack cover many matters which, if well taken, would be fatal to the projected improvement without in the slightest degree benefiting the appellant. The appellant only owns an undivided one-eighth interest in the lands sought to be expropriated, and, although it is shown to be low, flat, salt marsh, unfit for human habitation, and unfit for farming or cultivation of any kind, he claims for it a value of $200 per acre on the water front and $100 per acre back from the water, while his co-owners of the other seven-eighths of the same land have acquiesced in the condemnation at the comparatively insignificant figure of less than $6 per acre. Considering the character of the land, it is by no means certain that any kind of canal digging done upon it pending the litigation would do any substantial injury, even if thereafter the canal should be abandoned. A jury of the freeholders in Jefferson county awarded the sum of $281.80 as the actual damages to the appellant for the expropriation sought, and that amount of money has been deposited to the credit of the appellant. The circuit judge required the appellant to file a bond in the sum of $5,000, conditioned to pay all damages which may be finally adjudged against the Port Arthur Channel & Dock Company in the condemnation proceedings. Without expressing any opinion as to the real value of the land in question, we are of opinion that the deposit already made and the bond required by the

circuit court fully protect the appellant from all damages he may possibly incur pending the litigation, and that no injunction pending the said litigation is necessary to prevent irreparable injury.

The other questions raised by the assignments of error need not be passed upon at this time. The order of the circuit court appealed from is affirmed.