## STONER *v.* PATTEN. ·

1. An assignment of error upon the admission of testimony, where the evidence objected to is neither literally nor substantially set out, can not be considered.
2. "An injury to a subterranean supply of water by lawful acts of an adjacent landowner, done within his own premises, is, unless the stream is well defined and its existence known or easily discernible, or unless the injury is caused by malice, damnum absque injuria."
3. It is error to charge the jury, in a suit at the instance of a lower riparian· proprietor to enjoin a licensee of an upper proprietor from the diversion of the water of a stream, that the privileges of such licensee, to whom the upper proprietor has granted a right to convey a part of the water to supply his residence on non-riparian land, are equal and coextensive with those of a riparian proprietor with respect to the use of the water.

Submitted June 19, 1908.—Decided February 22, 1909.

Equitable petition. Before Judge Wright. Walker superior court. August 19, 1907.

*Payne & Payne* and *Lumpkin & Wright,* for plaintiff. *Williams & Lancaster, F.˙W. Copeland,* and *R. M. W. Glenn,* for defendant.

EVANS, P. J. An interlocutory order passed by the trial judge in this case was reviewed in 124 *Ga.* 754 (52 S. E.. 894)·, and a summary of the pleadings is given in 'the report. On the trial of the case a verdict was returned for the defendant, which the court refused to disturb on motion for a new. trial.

1. The motion for a new trial assigns error upon several charges of the court, and also upon the admission of certain evidence. Since the grounds of the motion assigning error upon the admission of testimony do not set out either literally or in substance the evidence objected to, they can not, under repeated rulings of this court, be considered. *Moore* v. *State,* 130 *Ga.* 322 (60 S. E. 544).

2. The evidence discloses that the plaintiff owned a small tract of land, adjacent to which was another tract owned by Mrs. Powell, upon which latter tract was a spring (hereinafter called the Powell spring). Upon her land, about 150 or 175 yards from her spring, and at an elevation of about 140 feet above it, is a small stream on the side of Lookout mountain, which oozes from the mountain side in various smaller streams, these latter uniting and forming a single stream. Patten secured from Mrs. Powell the right to convey water from this stream to his residence, which

was beyond her land, and constructed a catch-basin and reservoir on Mrs. Powell's land with overflow pipes, into which the water flowed, and from there it was conveyed by a pipe to Patten's premises. Prior to the construction of the reservoir this stream ran a few feet and disappeared into what is called a sinkhole on the side of the mountain. The plaintiff claimed that this water, after it disappeared in the sinkhole, ran in a well-defined channel to the Powell spring and from thence in a well-defined underground channel to a point on his land, where it reappeared, about 200 yards below the Powell spring. The plaintiff sought to enjoin Patten from interfering with his alleged riparian rights by diverting this water from his property; and the main issue in the case was whether the stream which the defendant diverted ran in a well-defined underground channel from the sinkhole near the defendant's basin or reservoir, by an exact course which could be traced, to the point where it is alleged to have made its reappearance on plaintiff's land, or whether the spring or stream on plaintiff's land was supplied by subsurface percolating water. In applying the law to this issue as made by the pleadings, this court, when the case was considered on the refusal of a temporary injunction, said that "unless it was the same stream of water, Patten had the undoubted right to use the water emerging at the point on Mrs. Powell's land where he proposed to connect his pipe, and could, with her consent, divert it from its natural course so far as the plaintiff was concerned. On the other hand, if one and the same stream flowed beneath the surface of both the Powell tract and that owned by the plaintiff, and its course was well defined and could be traced with certainty, then Patten would have no more right to divert it from the plaintiff's land than he would if the stream flowed continuously upon the surface." The rule seems to be well settled that "an injury to a subterranean supply of water by lawful acts of an adjacent landowner, done within his own premises, is, unless the stream is well defined and its existence known or easily discernible, or unless the injury is caused by malice, damnum absque injuria." Williams v. Ladew, 161 Pa. St. 283 (29 Atl. 54, 41 Am. St. R. 891); Tampa Waterworks Co. v. Cline, 37 Fla. 586 (20 So. 780, 33 L. R. A. 376, 53 Am. St. R. 262); 3 Farnham on Waters, §§ 280, 281; Saddler v. Lee, 66 Ga. 45 (42 Am. R. 62). The principle stated in another

form is found in the Civil Code, § 3880: "The course of a stream of water underground, and its exact condition before its use, are so difficult of ascertainment, that trespass can not be brought for any supposed interference with the rights of a proprietor." The books abound with reported cases from courts of last resort, wherein it is held that if the owner of the land, in the absence of malice, make an excavation on his own premises, thereby draining the well of another, the draining being caused by cutting off the underground springs or fountains which supplied the well, no action will lie. New Albany R. Co. *v.* Peterson, 14 Ind. 114 (77 Am. D. 760); Greenleaf *v.* Francis, 18 Pick. 117; Frazier *v.* Brown, 12 Ohio St. 294; Delhi *v.* Youmans, 50 Barb. 316. The ownership of land extends indefinitely within the bowels of the earth, and the owner has the same exclusive proprietorship in the water which seeps through his soil and collects in the substrata, as in that water which falls from the clouds upon the roof of his house and is collected into a cistern, until the percolating water becomes a part of a well-defined stream. An underground stream of water differs from a surface stream only with respect to its location above or below the surface. A stream of water has a defined channel; it has banks, and is very distinct from the percolations of subsurface water, which oozes in veins or filters through the earth's strata. When a lower proprietor complains of the use of water by an upper proprietor, which he claims to come to his premises by an underground stream, the burden is on him to show that it is a stream of water flowing in a marked or well-defined channel in contradistinction to subsurface percolating water. The excerpts from the charge which are criticised in the first, second, and third grounds of the amended motion were adjusted to the pleadings and evidence, and in substantial accord with these legal principles.

3. The court also instructed the jury that in the event they found from the evidence that the water alleged to have been diverted, in its natural state, flowed in a well-defined underground stream, emerging on plaintiff's land, and flowed through it, the privileges of Patten and Stoner, with respect to its use, were in all respects equal, and that each may divert so much of the water as will not reasonably impair the rights of the other. The criticism made on this charge is that Patten did not assert in his answer that he was a riparian owner of any land above Stoner's

land, nor did it appear in the evidence that he was the owner of any land on which the stream flowed, located above the plaintiff's premises; and that as a matter of law Patten had no riparian rights, but only such right to use the water as Mrs. Powell; the upper proprietor, could legally confer upon him by a parol license to convey water for supplying his residence, which was on non-riparian land. We think the criticism is well taken. Mrs. Powell did not grant to Patten any land, nor did she convey to him all her riparian rights appertaining to the stream on her land, but only a license to convey by·pipes a supply of water for his residence, situated some distance from her land. By the terms of his grant from Mrs. Powell, Patten did not become a riparian owner of the stream; and it was error to charge the jury that he had all the privileges of a riparian owner, and his privileges under the Powell license were coextensive with the riparian rights of the lower proprietor. A riparian proprietor is the owner of land, bounded by a watercourse or lake, or through which a stream flows. French-Glen Livestock Co. v. Springer, 35 Or. 312 (58 Pac. 102). Patten did not become a riparian owner of the stream on the land of Mrs. Powell by virtue of his contract with her.

*Judgment reversed. All the Justices concur.*