CALDWELL–GUADALUPE PICK–UP STATIONS et al. v. GREGG et al. (No. 7393.)*

(Court of Civil Appeals of Texas. San Antonio. June 26, 1925. Rehearing Denied Oct. 7, 1925.)

1. Mines and minerals ⊚⟿78(1)—Oil lease held to carry with it right to use so much of surface as was necessary to produce and save product.

Lease granting lessee right to mine and operate for oil, and produce, save, store, and take care of products, carried with it right to such use of surface of the premises as was necessary or reasonably incident to producing and saving product.

2. Mines and minerals ⊚⟿78(1)—Lessee required to maintain receptacles to impound waste oil coming from wells on leased premises.

Under lease granting lessee right to mine and operate for oil, lessee had the right, and was required, to construct and maintain appropriate receptacles to impound any overflow

of waste oil coming from wells drilled by it on leased premises.

3. Mines and minerals ⊚⟿78(1)—Oil produced by lessee upon its own lease held not abandoned, though it escaped from wells of its origin.

Oil which was lawfully produced by lessee on its own lease held not abandoned, though it escaped from wells of its origin, where it remained under control of lessee, and was conducted through lessee's own devices to another part of his lease, and there impounded in receptacles prepared for it by lessee.

4. Mines and minerals ⊚⟿81—Easement to use landowner's premises to capture waste oil flowing thereon construed.

Easement to use landowner's premises for purpose of capturing waste oil flowing thereon will, in absence of a conflicting easement, vest grantee with title to all waste oil abandoned by original owner and thereafter captured by grantee on demised premises.

5. Abandonment ⊚⟿7—Title to abandoned property passes to first taker.

Title to abandoned property passes to first taker thereafter obtaining possession.

6. Mines and minerals ⊚⟿81—Lessee held to be first taker of overflow oil after abandonment, thereby obtaining title thereto.

Lessee of premises to mine and operate for oil, which located its pits in pursuance to its rights under terms of lease so that abandoned product from other proprietors came naturally to rest therein, became first taker after abandonment, thereby obtaining title to such oil.

7. Mines and minerals ⊚⟿81—Lease to mine for oil will prevail over grant from owner of surface of exclusive right to impound waste oil from other premises.

Lease of premises for oil, imposing on lessee duty to prevent waste of oil from its lease, held inconsistent with grant from owner of surface of exclusive right to go upon lease and to impound waste oil from other premises, and lease, being prior and exclusive, and for greatly preponderating purpose, will prevail.

8. Mines and minerals ⊚⟿81—That lessee of premises for oil captured oil abandoned by third parties before its own lease began to produce held not ground for complaint by grantee of right to capture waste oil.

That lessee of premises for oil constructed its pits and captured oil abandoned by third parties before its own lease began to produce held not ground for complaint by grantee of exclusive right to go on lease and impound waste oil from other premises, where, under terms of its lease, lessee had right to take all steps it reasonably deemed necessary to save oil it expected to produce, and natural lay of land rendered it necessary to take such steps prior to actual production of oil.

9. Judgment ⊚⟿251(1)—Pleadings held to support judgment that lease and grant were inconsistent with each other.

In suit for value of waste oil flowing on leased premises brought by grantee of exclu-

sive right to go on lease and impound such oil, pleadings by lessee that grantee had no right to land to exclusion of lessee *held* sufficient to support judgment that lease and grant were inconsistent and repugnant to each other.

**10. Confusion of goods ☞4—Doctrine of confusion of goods held inapplicable to mixing of oil without fault.**

In suit for value of oil flowing on leased premises by grantee of exclusive right to impound such oil, with no evidence showing how much of oil flowing into lessee's pits was waste oil from other leases or from lessee's lease, doctrine of confusion of goods in ascertaining grantee's damages *held* inapplicable, where leasee was not a wrongdoer in constructing and locating his pits.

Appeal from District Court, Guadalupe County; Lester Holt, Judge.

Action by D. A. Gregg and others against the Caldwell-Guadalupe Pick-Up Stations, United North & South Oil Company, and others. Judgment for plaintiffs, and named defendants appeal. Reversed and rendered.

White, Wilcox, Graves & Taylor, of Austin, Dibrell & Mosheim, of Seguin, R. B. Ellis, of Luling, and A. J. Wirtz, of Seguin, for appellants.

Rainbolt & Hopkins, of Gonzales, C. F. Richards, of Lockhart, and Leon Green, of Austin, for appellees.

SMITH, J.   One of the appellants, the United North & South Oil Company, herein designated as the oil company, was the owner of an oil and gas lease executed in the year 1919 by J. E. Allen and wife. The lease was in the usual form of such contracts, and originally covered two tracts of land in Guadalupe county, embracing 140 acres and 200 acres, respectively. Prior to the transactions now in controversy, however, the lease was assigned in parts to others, so that C. C. Cannon became the lessee of the west 35 acres of the 140-acre tract, and the Grayburg Oil Company, the Texas Company, and the J. K. Hughes Company became the lessees of separate tracts embracing the north 65 acres of the 200-acre tract. This left under the original lease the east 105 acres of the 140-acre tract, and the south 135 acres of the 200-acre tract.

The 200-acre tract and the 140-acre tract are oblong in form, extending east and west, and lying parallel to and adjoining each other. The 140-acre tract lies north of the larger tract, both tracts slope downward to the north, and drain through natural "draws," or ravines, into Brushy creek, which forms the north boundary line of the 140-acre tract. The 65-acre strip, covered by the leases of the Grayburg, Texas & Hughes Companies, is only 600 feet wide, and lies between and completely segregates the residue of the two larger tracts, although both the latter are covered by the one lease, now owned by the oil company.

Appellant oil company drilled a string of wells near the upper edge of its lower, or 140-acre, tract, and other wells at various points on its upper tract of 200 acres. The lessees of the narrow strip between these two tracts also brought in producing wells, as did other adjacent owners. All the tracts lay upon the same hillside, and waste oil from many of the wells flowed naturally with the slope, and down upon appellant's lower, or 140-acre, tract. In order to rescue and save the waste oil from its own wells on both tracts, the oil company constructed pits and ditches upon its lower tract, and in this way impounded the waste oil, not only from its own wells, but from those of adjacent tracts owned by third parties.

In the early stages of these activities, on April 7, 1924, Allen, the lessor and owner of the soil of the tracts in controversy, executed to O. Lackey and another a license or grant of the exclusive right to "build, operate, and maintain on the land therein described a plant for the purpose of picking up and conserving the waste oil that flows down the creeks, ravines, and across the land." This grant purported to cover the original 140-acre tract embraced in the first lease, and was subsequently assigned by Lackey to Gregg and others, appellees herein. At the time this grant was made the grantees and their assignees, who are appellees herein, had both constructive and actual notice of appellants' prior lease and its terms and conditions. Upon obtaining this grant appellees sought to construct pits and ditches of their own upon the 140-acre tract covered by both grants for the purpose of intercepting and impounding waste oil flowing thereon from adjacent leases.

Appellees claim, however, that, when they undertook to proceed with this operation, they were ejected from the premises by appellant, and because of that ejectment made no further effort towards capturing and impounding the fugitive oil. All of this waste oil was appropriated by appellant, and appellees, of course, got none of it. If under their grant appellees had been permitted to carry out their plans, they claim they would have constructed pits so as to capture this waste oil, which they would have appropriated to their own use; their contention being that all waste oil flowing from other premises than the 140-acre tract had been abandoned by its original owners, and that as the first takers they would have become the owners of it. They contend that, because appellant ejected them from its leased premises, they were deprived of a right given them under their grant to use those premises for the purpose of capturing and appropri-

ating all waste oil flowing thereon from other premises including the 200-acre tract covered by appellant's lease.

The trial court adopted appellees' theory and contentions, and, upon findings of the jury, rendered judgment for appellees for the value of all waste oil flowing upon appellant's lower tract from other leases, including that originating from appellant's own wells in its upper, or 200-acre tract. The Caldwell-Guadalupe Pick-Up Company, one of the appellants, was employed by the oil company as its agent in constructing and operating its pits, and the judgment obtained by appellees was against both companies, who have appealed. For convenience in statement we have referred in this opinion to the oil company, only, as the appellant, and will continue to do so.

The basic question in the whole case is that of the relative rights of the parties under their respective grants to the use of the surface of that part of the 140-acre tract covered by both grants.

[1] Under the terms of the original lease in question the premises in controversy were "granted, demised, leased, and let" to appellant oil company "for the sole and only purpose of mining and operating for oil and gas and laying pipe lines and building tanks, powers, stations, and structures thereon to produce, save, store, and take care of said products." It is elemental that the grant of the right to mine and operate for oil, and to produce, save, store and take care of the products of such operations carried with it, by necessary implication, the correlated right to such use of the surface of the premises as was necessary or reasonably incident to the basic object of producing and saving the product. The grant of such easement would necessarily have been implied, even if it had not been expressed in the contract.

[2] It is conceded by appellees, or at least it follows as a matter of law, that, in carrying out the object of the lease contract, appellant, as the lessee, had the undoubted right and it was its obligation under the contract, to construct and maintain earthen pits or dams or any other appropriate receptacles to arrest, impound, and market any overflow or waste oil coming from wells drilled by it on the leased premises. To accomplish this purpose and perform this duty the lessee was obliged to construct and so locate as many pits as were necessary to cut off all avenues by which the oil might escape from the premises. To do less would be only to accomplish in part the object in view. To leave open any of the outlets would result in the loss of some of the product of the lease, thereby doing violence to the lessee's own interest, as well as to its duty to the lessor, to whom it was obligated to save and deliver one-eighth of all the oil produced from the premises under lease. In other words, the lessee had the right to use its own judgment in locating its pits on the leased premises. It was its duty to locate them at strategic points, with due regard to the object in view. If it negligently placed the pits so that any oil produced from the lease escaped and was lost, it was accountable to the lessor for the value of his royalty so lost, and must stand its own loss besides.

The lessee in this case had two tracts, but both were under one lease. Both lay upon the same hillside, sloped in the same direction, drained into the same outlet. The lessee, then, was put to the choice of pit locations to serve the whole lease. As a practical matter it located its pits upon the lower tract in order that they might serve both tracts, thus avoiding duplication, which it had the option of doing under its contract with the lessor. The fact that narrow leases of third parties lay between the two tracts, and were used by appellant in conducting its waste oil from the upper to the lower tract, does not affect the situation. Those parties do not complain of that use of those intervening premises, and it will be assumed, and the record shows, that appellant lawfully obtained the easement. Certainly appellees cannot complain of it.

[3] It is contended by appellees, and the trial court gave effect to the contention, that, when appellant's oil produced from the upper tract passed from that tract, it was thereby abandoned by appellant, even though appellant retained control of it and directed its movement across the intervening strip, onto the lower tract, and into the pits appellant had constructed thereon for its reception. Clearly this was error. This oil was impressed with none of the elements of abandonment. It was lawfully produced by appellant, upon appellant's own lease, and, while it escaped from the wells of its origin, it remained under the control of appellant, and was conducted through appellant's own devices to another part of appellant's lease, and there impounded in the receptacles prepared for it by appellant. So long as appellant had not abandoned it, had not surrendered actual or even constructive control of it, appellant had the right to pursue and appropriate it, and this perhaps would have been true even if appellant had lost temporary control of it but retained an intention not to abandon it. So much as to the oil originating from appellant's upper tract and arrested and impounded upon the lower tract in the pits in question.

We come now to the principal question in the appeal, the respective rights of the parties to take the oil which drained from the leases of third parties into the pits constructed by appellant upon its lower tract. It is the contention of appellees that under its lease appellant had no right to arrest and impound waste oil from other premises; that

the grant to them, from the owner of the surface, of the exclusive right to go upon appellant's lease and construct pits and impound waste oil wandering thereon from other premises was superior to any right of appellant under its lease; that appellant ejected appellees from the premises, wrongfully exercised the easement exclusively granted appellees, and was liable to the latter for the value of all the oil appellees would have impounded but for such ejectment. The theory of appellees is that all such oil was waste oil which had been abandoned by those producing it, to become the property of the first person thereafter, lawfully taking possession of it; that but for their ejectment from the premises appellees would have constructed pits and other contrivances on those premises, and would themselves have captured the trespassing oil, which would have thereby become their property.

The grant to appellees was of "the exclusive right to build, operate, and maintain * · * * a plant for the purpose of picking up and conserving the waste oil that flows down the creeks, ravines, and across the land" embraced in the 140-acre tract. As has been shown, the grant was executed long after the execution and delivery of appellant's oil and gas lease, of which appellees had both actual and constructive notice when they took the later grant. Of course, the latter was subject to the prior grant, was subordinate to it, and, if the two grants were inconsistent or repugnant in any respect, then in such respect the later grant would be ineffectual.

[4] Ordinarily, the purpose of the later grant would have been a proper and lawful one, and would have conveyed rights legally assignable by the owner of the soil. It simply granted an easement to use the landowner's premises for the purpose of capturing waste oil flowing thereon; and, primarily, in the absence of a conflicting easement, the grantee in the exercise of the grant would take title to all waste oil abandoned by the original owner and thereafter captured by the grantee on the demised premises. This upon the doctrine that, where the owner of a thing abandons it, the first who thereafter gains possession of it becomes the owner. Giving direct application to the doctrine, if appellees, lawfully under the power of their grant, had constructed pits upon the 140-acre tract, in such manner and at such points as would in no way interfere with appellant's rights and its devices of saving oil from its own wells, and abandoned oil from other premises had flowed into those pits, then it would have become the property of appellees.

It may be further said that under the terms of its grant appellant oil company did not have the primary right to use the premises covered by its lease for the purpose of arresting and impounding abandoned oil flowing thereon from other premises. Its grant is not deemed to primarily encompass any right or easement other than that connected with or growing out of its operation to produce oil from the premises covered by its whole lease, and the correlated right to save, transport, and market the oil so produced by it.

But under the terms of its lease appellant had the right and it was its duty to locate and drill its wells at the most advantageous points on its lease in order to draw the oil from under the surface of the land. So did it have the correlated right, and it was its correlative duty, to so locate and construct its pits as to certainly and efficiently arrest, impound, and save all the oil flowing from such wells. That is what appellant did in this case. It placed its pit strategically, so as to catch all oil which would likely escape from its wells and run wild over the premises. To this extent it must be conceded that it was acting well within the terms of its grant, and made a proper use of its surface easement in locating and maintaining those pits.

But it appears that oil, abandoned by those who produced it, wasted from other premises than those covered by appellant's lease, flowed upon appellant's premises and drained naturally into appellant's pits, where it intermingled with appellant's oil. The question arises, then, as to appellant's right to claim and appropriate this oil, which wasted from the premises of strangers, who had abandoned it, and came into appellant's possession.

[5, 6] The question is not deemed difficult, in view of the foregoing conclusions. Appellees concede the well-established rule that the title to abandoned property passes to the first taker thereafter obtaining possession of it. It is in fact upon this rule that appellees ground their claim to the oil for the value of which they sued and recovered herein, in that it is contended that under their grant they had exclusive right to take the oil; but were prevented from doing so because appellant wrongfully ejected them from the premises, and itself unlawfully took the abandoned property, which appellees would otherwise have taken. Disregarding the element of wrongful ejectment for the moment, we conclude, however, that the application of this rule destroys appellees' claim, for the clear reason that appellant located its pits in simple and plain pursuance of its rights and duties under the terms of its grant, and the fugitive and abandoned product, yielding to the law of nature and seeking its level, came naturally to rest in those pits; wherefore appellant was its first taker after abandonment, thus obtaining title to it.

[7] As a practical matter, the grant asserted by appellees, at least under the facts peculiar to this case, was inconsistent with and

repugnant to the prior grant of appellant. For, as we have endeavored to show, it was appellant's right and duty before it brought its oil to the surface to take such steps as it reasonably deemed necessary to prevent waste of oil from its wells, which in this case consisted in the construction of pits at such locations as were reasonably necessary to catch all such waste. If appellees had gone upon the premises and placed pits so as to intercept the natural drainage, even if they were only for the primary purpose of catching waste oil from other premises, this act would have been in derogation of appellant's easement, and in direct contravention of its right to establish and maintain its pits for the saving of its own waste oil, which, because of the peculiar lay of the land, drained through the same natural channels as would waste oil from other premises. Each party required the same drainage channels for the purpose of its grant; neither could use those channels to the exclusion of the other, although each claimed and under its grant was given such exclusive use. In such case the grants were inconsistent and repugnant, and appellant's grant, being prior and exclusive, and for a greatly preponderating purpose as well, must prevail.

Appellees in effect concede in their original brief that appellant's pits were properly located and constructed for the purpose of saving its own waste oil; and it is not contended, nor is there any evidence tending to show, that but for their ejectment appellees could or would have constructed pits of their own in such manner as to impound abandoned oil from leases of third parties without at the same time and by the same means interfering with the flow of waste oil from one or both of appellant's tracts into the latter's pits. The resulting fact that any pits constructed by appellees would have had the effect of interfering with appellant's proper operation to save its own waste oil clearly and efficiently demonstrates the inconsistency of the two grants.

[8] Appellees complain that appellant constructed its pits and captured some oil which had been abandoned by third parties before its own wells began to produce; and appellees claim that under their easement they had the right to the exclusive use of the premises for the purpose of capturing this waste oil, until appellant's own oil began to waste over the premises. But there is no merit in this complaint. Under the terms of its easement appellant had the right to take all steps it reasonably deemed necessary to save the oil it expected to produce, and the natural lay of the land rendered it necessary to take these steps prior to the actual production of the oil. And, inasmuch as the proposed activities of appellees would have interfered with appellant's operations, it was the latter's right to forestall appellees and to deny them the use of the premises for a similar purpose. If appellant had sat idly by and permitted appellees to take possession and subject the premises to their uses, then appellant would have been in an awkward and hazardous position when, subsequently, it had sought to enforce its superior rights. This contention of appellees but further emphasizes the inconsistency of the two grants, and sustains appellant's pleading and proof of its superior grant.

[9] Appellees contend in their motion for rehearing that appellant had no pleadings specifically supporting the holding that the two grants were inconsistent with and repugnant to each other, and that this court has therefore decided the cause upon a theory not contemplated in the trial court. Appellant expressly pleaded that its grant was superior to that of appellees; that by virtue of their grant the latter were not the owners of any right or interest in the land in controversy which would authorize them to impound and save oil from the surface of the land; and that "especially is this true that they had and have no legal right to said land to the exclusion of" appellant. If its position as defendant in the cause required appellant to specially plead the inconsistency of the grants, which is doubtful, then we think the matter was sufficiently pleaded; and as appellant requested and was refused a peremptory instruction in its favor it was the duty of this court to consider that defense, and, it being vital to the cause, decide the case thereon. When we hold, as we do, that the two grants are inconsistent and repugnant each to the other, and that appellant's should prevail over appellees', we but hold that appellant's grant was superior to that of appellees', and that the latter was ineffectual and unenforceable because in contravention of the former, which defense was expressly pleaded by appellant.

[10] It was contended by appellees, and the trial court adopted that contention, that there was no evidence by which the jury could determine how much of the oil flowing into appellant's pits was waste oil from the premises of other leases, or how much from appellant's leases, which showing would have been necessary in a proper case to establish the measure of damages. In this situation the trial court resorted to the doctrine of confusion of goods, under which an owner who wrongfully permits the property of others to become so intermingled and confused with his own property as to render impossible the identification of either is held to be under the burden of disclosing such facts as will insure a fair division, and, if he fails or refuses to do so, the combined property, or its value, will be awarded to the injured party. In this we think the court erred. Appellant was not a wrongdoer in constructing and locating the pits in question. It was its du-

ty no less than its right to so place them. If others permitted their oil to waste over appellant's premises and mingle with its oil, without the fraudulent connivance of appellant, and knowing that the product would instantly become confused beyond possibility of the identification of either, then certainly appellant may not be penalized to the profit of the other party on account of the resulting confusion.

We hold, then, that under the terms of its grant appellant was fully warranted in locating, constructing, and maintaining the pits in question; that the practical effect of appellees' grant if enforced, would have been to destroy or seriously impair the easement guaranteed to appellant under its grant, which, being prior to that of appellees, was therefore superior to it; that, when the waste oil, abandoned by third parties, flowed into these pits without the fraudulent connivance of appellant it thereby became the property of the latter as the first lawful taker after its abandonment, at least as against appellees; and that the latter was therefore not entitled to recover of appellant for the value of the product so taken.

The sufficiency of the description of the land purported to be affected by appellees' grant, and of the evidence to support appellees' claim of ejectment, are serious questions in the case, but, in view of the foregoing holding, those questions become immaterial, and need not be decided.

The judgment will be reversed, and, as the case appears to have been fully developed, judgment will be here rendered for both appellants.

The original opinion herein will be withdrawn and the foregoing substituted in lieu thereof as the opinion of the court, but appellees' motion for rehearing will be overruled.