**UNITED NORTH & SOUTH OIL CO., Inc., v. MERCER et al. (No. 6981.)**

(Court of Civil Appeals of Texas. Austin. May 19, 1926.)

**1. Mines and minerals ⬦⇒52—Permanent injunction, restraining oil and·gas lessee from diverting fugitive waters and oils from lessor's pick-up on leased land, held improper interference with lessee's contract rights.**

Under oil and gas lease, giving lessee possession of leased land for development purposes, permanent injunction restraining lessee from diverting, from lessor's pick-up station on leased land, fugitive waters and oils coming from oth-·er· lands, *held* improper interference with les-·see's rights, notwithstanding lessor's contention that location of well in area covered by backwaters of pick-up was not made in good faith.

**2. Mines and minerals ⬦⇒78(1).**

, Under oil and gas lease, giving lessee possession of land for development purposes, lessee has right to possession of any part of surface reasonably necessary for development and exploration, and lessor has right to possession of portion thereof not reasonably necessary for such purposes.

**3. Mines and minerals ⬦⇒47.**

Though abandoned property, such as fugitive oils, belongs to first taker, reducing it to possession, law gives no one a prior right as to such· property.

**4. Mines and minerals ⬦⇒52—Permanent injunction, restraining oil and gas lessee from diverting fugitive waters and oils from lessor's pick-up station on leased land, held improper as making lessee's right to possession and use of property subservient to lessor's inferior right.**

Under oil and gas lease, ·authorizing lessee to construct pick-up stations, drainage ditches, storage tanks, and other necessary appliances, permanent injunction restraining lessee from diverting fugitive waters and oils coming from other lands from lessor's pick-up station on leased land *held* improper as making lessee's right· to possession and use of·premises under lease subservient to lessor's inferior right to become first taker of abandoned oil.

**5. Mines and minerals ⬦⇒78(1)—Lessor's use of premises to operate·pick-up station to·im-·, pound fugitive oils held in direct conflict with lessee's right to use·premises.**

Use of demised premises by lessor under oil and gas lease to impound fugitive waters and oils from other lands is in direct conflict with grant to lessee to use premises to operate pick-up stations to preserve production on leased premises.

Appeal from District Court, Caldwell County; M. C. Jeffrey, Judge.

Suit by the United North & South Oil Company, Inc., against W. F. Mercer and others, consolidated with a suit by W. F. Mercer and others against the United North & South Oil Company, Inc. From a judgment and orders granting part of the relief sought by both parties, the United North & South Oil Company, Inc., appeals. Affirmed in part, in part reversed and rendered, and in part reformed.

O. Ellis, Jr., and R. B. Ellis, both of Luling, E. B. Coopwood and C. F. Richards, both of Lockhart, and White, Wilcox, Graves & Taylor, of Austin, for appellant.

BLAIR, J. Appellee· Mercer executed to appellant, United North & South Oil Company, Inc., an oil· and gas lease covering 40 acres of land in Caldwell county, with the usual grant "for the sole and only purpose of mining and operating for oil and gas and laying pipe lines and building tanks, power stations, and structures thereon to produce, save, store, and take care of such products." He also executed a "pipe line permit,"· which authorized appellant to lay pipe lines and construct telephone lines in and upon the land. After the execution of these instruments, appellant developed the land for oil, bringing in eight producing wells, and, as provided for in the lease contract, constructed necessary storage tanks, pipe lines, pumps, flow lines, engines, power plants, telephone lines, pull lines, earthen storage tanks, ditches, and bleeding tanks to produce, save, store, conserve, transport, treat, and market the oil. Thereafter, over the protest of appellant, appellees constructed an earthen dump or dam across a natural depression on the 40-acre tract, for the purpose of maintaining and operating what is known as a "pick-up station," to catch and reduce to possession abandoned or fugitive oil· escaping from oil wells on two tracts of land lying immediately northeast and· east of the 40-acre tract, but in which tracts and the oil production thereon neither appellant nor appellees had any interest. Rainwaters and waters and oil escaping from the wells on the adjoining tracts follow the natural drainage of the land to the public road which separates them from the 40-acre tract; thence down the drainage ditches of the road to a point in the natural depression on the 40-acre tract; thence down the depression across the 40-acre tract to the lower side into appellees' pick-up station. Rainwaters have followed this course since 1887 or longer.· Over the artifi-

cial ditches along the public road neither appellant nor appellees have any right of control. The depression across the 40-acre tract is by nature slightly lower than the surrounding land, and is from 120 to 140 feet in width, running across the tract, and was before the commencement of oil operations in that section of the country dry, except in wet weather. The waters and oils escaping from the wells on the adjoining tracts now furnished a considerable volume which must flow over this natural depression. Five of appellant's wells are on the north side of the depression and three on the south side; but no waste or fugitive oil from them ever reached appellees' pick-up station. Appellant was constructing on the north side of the depression a pick-up station with laterals and a ditch running across the 40 acres to it. This ditch parallels the natural depression, and is only a few feet to the north of it. The waste oil from the three wells on the south side of the depression has been piped across it to tanks on the north side. Appellant commenced to construct a ditch, going beyond the boundary of its 40-acre lease, so as to intercept the flow of water and waste oil from the adjoining tracts northeast and east at a point on the public road ditch only a few feet above where said water and oil naturally left the road ditch and flowed down the depression to appellees' pick-up station. Appellee Felix Hershap, who was employed by appellee Mercer as caretaker of his pick-up station, interfered with appellant's workmen and teams, getting in front of them and refusing to permit them to construct this intercepting ditch, which would have diverted the water and oil collected in the road ditches from other lands in no way connected with the lease of appellant, and caused them to flow through appellant's artificial ditch and into its pick-up station, thereby changing the course of same from the natural channel and flow.

Appellant filed its application for an injunction against appellees Mercer and Hershap, seeking to enjoin and restrain them (a) from interfering with its construction of the intercepting ditch, and (b) from maintaining and operating the pick-up station across the depression on the leased premises. The grounds alleged for the first order were that the waters and oils flowing down the depression covered and surrounded a large portion of appellant's metal pipes and telephone poles, injuring them by rust and decay, that the waters and oils interfered with its repairing these instruments of operation and production, and that the construction of the ditch would confine the waste waters and oils of other lands to a very small area, thereby minimizing the injuries complained of and enabling appellant to conveniently and adequately carry on its operations on appellee's land as authorized by the contract. The grounds alleged for the second order

were that appellees' earthern pick-up station or dam across the depression caused water containing sulphur and other mineral substances to be impounded and to stand on the leased premises covering and surrounding a large area on which its pipe lines and telephone poles were laid and constructed, producing rust and decay, and interfering with appellant's repair of them; that appellees' maintaining and operating the pick-up station or dam constituted a nuisance, and was in conflict and interfered with appellant's superior right to use the land for the same purpose and other purposes granted by the terms of the lease contract.

On the following day appellee Mercer filed his petition for injunction, seeking to enjoin and restrain appellant (a) from constructing the proposed ditch which had for its purpose the diverting of waters and waste oils from their natural channel or course; and (b) from in any manner interfering with his maintaining and operating his pick-up station. The grounds alleged for the first order were that the intercepting ditch would change the natural course and flow of water from other lands over appellee's land, and that the diverted water would wash and materially injure his land. The grounds alleged for the second relief sought were that appellee's pick-up station was upon and along the natural channel or depression of the land and only intercepted waters and waste oils coming from lands not under the lease contract with appellant, that it did not back up or cause water to stand over and around the pipes and telephone poles, and that it in no way interfered with appellant's use of the premises for the purposes of the lease contract.

The two suits were consolidated by order of the court, and, after hearing the evidence in chambers, the court granted a part of the relief sought by both appellant and appellees; that is, appellees, defendants in the trial court, were restrained (a) "from in any manner interfering with the plaintiff in the digging and excavating of the ditch, runways, and laterals, set out in the petition of plaintiff," and (b) from interfering "with the construction and completion of the pick-up station mentioned in said pleadings of plaintiff and the use of said ditch and pick-up station in picking up and saving all waste oil produced on said land of W. F. Mercer."

On appellees' petition, appellant, plaintiff in the trial court, was restrained (a) "from in any manner constructing a ditch so as to intercept or change the flow of water and oil coming onto this tract of land from other lands not under lease from these defendants or either of them, to the plaintiff, from the natural channel over which said water and oil now flows"; and (b) from in any manner preventing "such water and oil from coming onto and passing over the lands of the defendant W. F. Mercer and into the pick-up

station operated by the defendants, W. F. Mercer and Felix Hershap"; and (c) from interfering with the operation by defendants of the pick-up station constructed by them across the natural depression.

Appellant has appealed from the restraining orders against it. It also contends that the injunctive relief granted it should be reformed and enlarged so as to allow the full relief sought by it. Several assignments of error are urged, but resolve themselves into the following questions, which determine the case:

(1) Does the judgment of the court prevent appellant from exercising the rights granted under its lease and pipe line contracts of so controlling the flow of artificial and other waters going upon appellee's land as to enable it to inspect and preserve from injury its pipes and other property, and to conveniently and adequately carry on its operations for oil and gas on appellee's land as authorized by the lease contract?

(2) Does the judgment make appellant's right to use the surface for its various operations, as provided in its lease and pipe line contracts, subservient to appellees' inferior right to become the first taker of abandoned or waste oils?

(3) Does the maintenance and operation of the pick-up station by appellees interfere with and violate the rights guaranteed appellant under the terms of its lease contract?

[1] Each of the three questions should be answered in the affirmative. If the first question had only involved appellant's right to intercept and divert the natural or even the artificial waters and oils from their natural course or channel so as to enable it to preserve and inspect its pipe lines and other property, the permanent restraining order relating to this phase of the case would probably be correct, for the trial judge could have reasonably concluded from the evidence that the injury and inconvenience complained of were not of material consequence. In other words, the injury and inconvenience caused by waters and oils flowing down the natural channel and covering and surrounding these instruments of operation were not shown to materially interfere with appellant's present development of the land for oil and gas, and the order restraining the diversion was probably justified, since to do so would damage the land by washing it along the proposed new ditch or channel through which they were to be diverted. Or, if the only question had been appellant's right to intercept and divert the natural flow of these waters and oils from appellant's pick-up station, which was alleged to cause them to back up and cover these instruments of operation, causing the injury and inconvenience, the restraining order would probably have been justified, for the evidence conflicts as to whether the operation of the pick-up station

actually caused the conditions complained of. Appellant's witnesses testified that it did so, while appellees' witnesses maintained the condition existed before the pick-up station and dam were constructed, and with the exception of a very small area this testimony is not disputed. But the pleadings and evidence go further, and show that the permanent order which forever restrains appellant from intercepting and diverting these waters and oils, as it proposed to do by the intercepting ditch, will in all probability seriously interfere with and prevent appellant from conveniently and adequately carrying on future operations for oil and gas as authorized by the lease contract. Appellees have not briefed the case, but it is clear from their testimony that they do not think the land has been fully developed as contemplated by the lease contract. Appellant admits that it has not fully developed the land, and that to do so will require the drilling of some five more wells. One of these wells has been tentatively located on the area now covered by the waters and oils flowing down the natural depression on the land and by the backwaters of appellees' dam and pick-up station; this location having been made prior to the time appellees constructed their pick-up station. It must be conceded that before drilling there the area must be relieved of these waters, and, that being true, the permanent order restraining appellant from diverting these waters and oils and from draining the area interferes with and prevents the convenient and adequate development of the leased premises for oil and gas as authorized by the contract, and for this reason that portion of the injunctive relief granted appellees should be dissolved.

While it may be true that the record casts some reflection or doubt upon the good faith of appellant to drill a well on the area now covered by the backwaters of the pick-up station, or the waters and oil now flowing down the natural channel and covering that area, still appellees will not be heard to urge that that lack of good faith authorizes them to take possession of and oust appellant from that portion of the leased premises. The lease contract gave appellant possession of every foot of the land for the purposes stated. It provided the only manner by which that right of possession may be forfeited. Appellant took lawful possession under the terms of the contract, and developed the land for oil and gas, and is now engaged in carrying out the purposes of the lease. It has done nothing that would cause the surrender of any portion of the premises to appellees. Over appellant's protest they have taken exclusive possession of a portion of the premises and are using that portion for their pick-up station, which interferes with appellant's lawful use of that portion of the premises for contemplated future operations

(286 S.W.)

for oil and gas as provided in the lease contract. It is therefore clear, under such facts and circumstances, appellees will not be heard to urge a lack of good faith on the part of appellant as authorizing them to deprive appellant of the right to use this portion of the leased premises for future development of the lease for oil and gas. In other words, can appellees urge appellant's alleged lack of good faith to further develop the land now occupied by appellees' pick-up station, when appellees' very possession and use of it deprives appellant of that purpose and intention, should it desire to actually commence operations? Certainly not. A lessee's right and duty to develop lands for oil and gas under the ordinary lease contract cannot be made subservient to the lessor's refusal to give possession, because he is of the opinion that the lessee's express desire and intention to commence development on a certain portion of the leased premises is not made in good faith. In its last analysis appellees' defense of their possession of the portion of the premises occupied by the pick-up station resolves itself into such a proposition.

[2] The law is now well settled in this state that, under a lease contract similar to the one under consideration, which has for its purpose the operation and exploration for oil and gas, the lessee has the right of possession of any part of the surface of the land as may be reasonably necessary for development and exploration, and the lessor has the right to possession of the surface not reasonably necessary to carry out the lease contract. Humble Oil & Refining Co. v. Woods, 277 S. W. 162, in which case it is held that the lessee's right of possession was violated by the construction of the dam causing the leased premises to be submerged in water, even though no development or operation for oil or gas had begun. In the instant case the lessee has developed the land into an oil field, with a large production of oil and gas. It construes the lease contract to require further development of the land, and has evidenced an intention to fully comply with the contract by making at least two tentative locations for wells to be drilled in the future. One location is where a peg is driven in the land on the area now covered by waters and oils flowing down the natural depression of the land, and on the area covered by the waters and oils impounded by appellees' dam and pick-up station. So without question that portion of the injunctive relief granted appellees, restraining appellant from forever diverting these waters and oils from where they now flow and stand, materially interferes with appellant's lease contract. The lease contract authorizes the diversion of these waters, if necessary to a proper development of the land for oil and gas, and the contract should not be impaired by the permanent restraining order which denies to lessee that right.

[3, 4] The second and third questions should also be answered in the affirmative. The judgment makes appellant's right to possession and use of the premises as provided in the lease contract subservient to appellees' inferior right to possession and use of the leased premises so as to become the first taker of abandoned or waste oil coming from lands other than those covered by the lease contract; and the operation of the pick-up station by appellees interferes with and violates appellant's right to use the leased premises for the purposes granted by the terms of the contract, including the right to maintain and operate storage tanks, ditches, drainage tanks, and pick-up stations necessary to care for the waste oil produced on the premises. It is now the settled law of this state that, while abandoned property belongs to the first taker who reduces it to possession, still the law gives no one a prior right as to such property. The law simply provides that it goes to the first taker, and does not attempt to go further and determine who may have a prior right to become such first taker. Humphreys Oil Co. v. Liles (Tex. Com. App.) 277 S. W. 100; Caldwell-Guadalupe Pick-Up Stations v. Gregg (Tex. Civ. App.) 276 S. W. 344. These cases hold that, since there is no recognized right of priority to become the first taker of abandoned oils, and since a lessee is under duty to construct tanks, pick-up stations, ditches, laterals, etc., by the express and implied terms of lease contracts similar to the one under consideration, that no one has a right to interfere with the lessee in his possession and use of the premises for these purposes, and that injunctive relief should be granted against a lessor attempting to maintain and operate a pick-up station on the leased premises into which fugitive oil from other lands might flow. One reason for the rule is that, the lessor not having a prior right to such abandoned oils, he has actually lost nothing by reason of not being permitted to use and occupy the premises for the purpose of picking up abandoned oils, though they come from other premises not involved in the lease contract.

[5] Another reason for the rule is that the use of the premises by the lessor to operate a pick-up station to impound fugitive oils from premises not covered by the lease is in direct conflict with the grant to lessee to use the premises to operate the same character of pick-up station in order to preserve the production on the leased premises.

The last cases cited go thoroughly into this question, and simply hold that the use of the premises by the lessor to construct a pick-up station for the purpose of capturing abandoned oil from other premises is necessarily in conflict with the prior and superi-

or grant to lessee to construct and operate this same character of station, and that to permit lessor or his assignees to do so would be to permit a wrongful interference with the existing rights granted the lessee. Since these cases thoroughly discuss the question involved, we do not feel that an extended discussion is necessary.

The general rule mentioned with respect to the right of dual possession of the lessor and lessee under oil and gas leases is not involved in this case. That rule simply refers to the respective rights of the parties which are not in conflict. We have examined many cases discussing the rule, and none of them authorize the lessor to assert a right of possession in conflict with rights which the lessee obtained under the terms of the lease contract. It cannot be seriously questioned but that, where the lease contract authorizes lessee to construct pick-up stations, drainage ditches, storage tanks, and other appliances necessary for the preservation and care of the oils produced on the premises, the construction by the lessor of the same character of station on the leased premises is in conflict with the prior right granted the lessee. Courts have on many occasions determined the respective uses to which the lessor and lessee may put the leased premises, as well as to the reasonableness of the uses; but, as between the lessor and lessee, none of these cases holds that the lessor can use the premises for the same purposes for which the lease contract authorized the lessee to use them. The question of the reasonableness of the use by lessor is not involved where the lease contract grants that same use to the lessee. A lessor cannot grant the right to use the premises for a specific purpose, and then ask the courts to authorize him to reasonably use the premises for the same purpose. Proper and convenient development should not be thus hindered and delayed.

For the reasons stated, the injunction against appellant should not have been granted.

We affirm that portion of the judgment restraining appellees from interfering with appellant in the construction of its ditches and pick-up station as stated in the judgment. We reverse the judgment with respect to all injunctive relief granted appellees against appellant as set out in the judgment, and here dissolve that portion of the injunctive relief granted. We reform and enlarge the injunctive relief granted to appellant so as to require appellees to abate and destroy the dam and pick-up station maintained and operated by them on the premises, and to require them to restore the surface of that portion of the premises to its former state and condition.

Affirmed in part, in part reversed and rendered, and in part reformed.