MAGNOLIA PETROLEUM COMPANY V. E. J. DODD.

No. 6371.   Decided April 24, 1935.
(81 S. W. 2d Series, 653.)

C. F. Richards, of Lockhart, W. H. Francis, A. S. Hardwicke, Walace Hawkins, Russell Surles, all of Dallas, for plaintiff in error.

In the absence of a showing of negligence on the part of an oil company which operates oil leases, it is not liable to one operating a pick-up station some distance down stream from it, because of logs and heavy timbers, in time of overflow, being washed down stream and striking and jaming his pick-up station. Miller v. Letzerich, 121 Texas, 248, 49 S. W. (2d) 404; International & G. N. R. R. Co. v. Reagan, 121 Texas, 233, 49 S. W. (2d) 414; Bunch v. Thomas, 121 Texas, 225, 49 S. W. (2d) 421.

Jno. N. Gambrell, Tom Gambrell, both of Lockhart, Hart, Paterson & Hart, of Austin, for defendant in error.

MR. JUDGE GERMAN delivered the opinion of the Commission of Appeals, Section A.

Defendant in error, E. J. Dodd, sued plaintiff in error, Magnolia Petroleum Company, to recover damages for injury to his pick-up oil station located in Seals creek. Seals creek is under our law a natural watercourse. The pick-up station was located on a 27 acre tract of land leased by defendant in error from Harry Hardeman, which tract apparently lay on both sides of the creek. The station was located in the main channel of Seals creek at or near the junction with the east prong of said creek. This station consisted of a flume, or catch pit, an underground storage tank, pumps, etc. As to its construction we quote the following statement from brief of defendant in error.

"The plaintiff's pick-up station was a device for forcing the waters of the creek through a comparatively narrow channel where the oil could be skimmed off of the top of the water as it flowed by. In order to protect the station from ordinary trash and sticks which would get into the water, the plaintiff had built a wire screen about three or four hundred feet upstream from the station. Walls of planks and dirt were built on the banks of each creek to divert the water through the

floats. Two floats were built, and were adjustable so that they would skim the water at any level. A large flume was also constructed with gates to be opened in case of floods.

"On the banks of the creek the plaintiff built a catch-pit which was about one hundred feet square. The sides of the pit were levees about four feet high. Surrounding the catch-pit was another levee about five feet high and about two hundred yards long, which was intended to keep the water from the creek in the normal channel and away from the plaintiff's catch-pit in time of flood.

"The rest of the plaintiff's equipment consisted of an underground steel tank with a capacity of 60 barrels, a 1500 barrel tank about fifty yards away, and an engine and pumps."

The plaintiff in error and other oil companies operated producing oil wells on various leases located some distance up Seals creek from where defendant in error's station was constructed. Waste oil from producing wells escaped and drained into Seals creek and floated on the waters of the creek to the pick-up station. Defendant in error's business was to capture this abandoned waste oil by means of his catching station, located in the creek as above described, and to market same.

In March and April of the years 1928 and 1929 there were heavy rains, which resulted in considerable flooding of Seals creek. These floods brought down a large quantity of lumber, derrick timbers, logs and brush from leases operated by plaintiff in error, which practically destroyed defendant in error's pick-up station and caused the loss of a considerable amount of waste oil which had been accumulated in the underground storage basin.

The basis of defendant in error's cause of action is very aptly stated in the opinion of the Court of Civil Appeals in this language:

"It alleged in substance and by reasonable inference that appellant as an upper riparian owner and operator of oil leases on Seals creek and its tributaries, negligently and in disregard of its duty and the rights of appellee, a lower riparian owner and operator of a waste oil pick-up station, left logs, fallen trees, heavy lumber, and derrick material in and along the banks of the creek and its tributaries, so that flood waters washed them down stream against appellee's pick-up station, causing damages. It is manifest from these allegations that appellee was charging appellant with a negligent and unreasonable use of its leased premises, and its right to use the stream

for floating logs, etc., by leaving thereon logs, fallen trees, heavy lumber, and derrick material in and so near the banks of the creek and its tributaries that they would be washed downstream against appellee's pick-up station, and would as the result of such negligence injure it."

Judgment for a considerable sum was awarded defendant in error in the district court and this judgment was reformed and affirmed by the Court of Civil Appeals. 52 S. W. (2d) 670. The theory upon which the Court of Civil Appeals affirmed the judgment is very concisely stated in the following portion of the opinion:

"The liability of appellant, as an upper riparian owner, for leaving waste matter or debris on its premises in and along the banks of the stream so that flood waters would wash them downstream, arises from the relation which existed between it and appellee as a lower riparian proprietor on the stream; and such rule of liability finds its foundation in the general principle, applicable in both law and equity, that one must use his own property so as not to injure that of another."

From the foregoing statement it seems to us obvious that if defendant in error was not a "riparian owner," or did not possess by virtue of his lease riparian rights in Seals creek, there is no basis of recovery in his behalf. Unless he was possessor of riparian rights, by virtue of which he established his pick-up station in Seals creek and rightfully obstructed its waters, it is manifest that plaintiff in error owed him no duty other than the duty of refraining from wilfully and intentionally injuring his property.

It is not claimed that defendant in error was in his own right a "riparian owner." He owned no land abutting on Seals creek. All he had was a lease by Hardeman which provided as follows:

"Party of the first part agrees to lease party of the second part for a period of ten years, beginning Dec. 1st, 1923, and ending Dec. 1st, 1933, privileges and rights for erecting an oil catching station on his farm of about twenty seven acres, with ingress and egress to said station, with privilege to build tanks and drainage on said farm on Seals creek, to lay pipe lines across said farm to pumping station and to make all other improvements necessary for the carrying on his business pertaining thereto."

1 However a riparian right may be defined; it is a universal rule that it is something inherent in and a part of the abutting land itself. "The right is one incident to the land—belongs

to it by nature." In the recent case of Collier v. Merced Irrigation District, 213 Calif., 554, 2 Pac. (2d) 790, it was said: "The riparian right is a usufructuary one in the stream, a part and parcel of the land." Riparian rights are founded on the theory that the land abutting on a watercourse receives benefits and increased usufructuary value by reason of the waters in the watercourse and the right to use the waters in connection with the land. In Volume 25, page 1062 of California Jurisprudence it is said:

"It has been said that the right of a riparian owner to the use of water bordering upon his land comes from the situation of the land with respect to the water, and the presumption that it was acquired with the view to the use and enjoyment of the *natural advantages and benefits* resulting therefrom."

Again at page 1065 it is said:

"The riparian right is a usufructuary right, one of user only, there being no ownership in the corpus of the water itself."

In the case of Richter v. Granite Mfg. Co., 107 Texas, 58, 174 S. W., 284, L. R. A., 1916A, 504, this court said:

"As the riparian proprietor of the land before its sale, Richter had no rights of ownership in the waters of the river; he only had such rights in their *use* as *inhered* in his ownership of riparian land. Riparian rights subsist only for riparian owners, and those who do not own riparian land cannot claim them."

It is of course admitted that neither defendant in error nor his lessor, Hardeman, had any title to or interest in the abandoned waste oil floating on the waters of Seals creek. It is apparent that the situation of the land with reference to the creek did not of itself invest defendant in error or his lessor with any interest in the waste oil or with any special right to appropriate same different from or superior to the right of anyone else. It is obvious that the waste oil had no relation to the beneficial use of the land abutting on Seals creek; nor did the presence of the oil on the water tend to confer on the land any added value or beneficial advantage.

We are unable to conceive therefore how it can be said that even Hardeman himself had any "riparian rights" so far as use of the stream for catching the waste oil was concerned, or how he could be considered a riparian owner in so far as possessing any right to obstruct the stream for the purpose only of catching the waste oil. If Hardeman was not a riparian owner in this regard, his lease to defendant in error

could create no greater right than he had. Besides it is to be noted that his contract did not attempt to confer on defendant in error any interest in the land as such or anything more than a mere easement. It would be going a long way to hold that the mere granting by lease of the "privilege and right of erecting an oil catching station" on the land, "with ingress or egress to said station," and with the further privilege of building tanks, and laying pipe lines in connection with the station, conferred on defendant in error riparian rights which justified the obstruction of the stream in the manner indicated above. Richter v. Granite Mfg. Co., supra; Bank of Hopkinsville, v. Western Ky. Asylum, 108 Ky., 357, 56 S. W., 525; Stoner v. Patten, 132 Ga., 178, 63 S. E., 897.

2 Our conclusion is that in obstructing the stream defendant in error acted as a volunteer and at his peril, and plaintiff in error owed him no duty as a riparian owner, but only the duty not to intentionally or wilfully injure his property. Defendant in error's suit, as shown above, was predicated on the theory that plaintiff in error as an upper riparian owner breached a duty due him as a lower riparian owner. It follows therefore that defendant in error had no pleading to support a cause of action upon the only theory under which plaintiff in error might have been liable to him.

The judgments of the district court and of the Court of Civil Appeals are set aside and judgment here rendered in favor of plaintiff in error.

Opinion adopted by the Supreme Court April 24, 1935.