**LINKENHOGER v. BROWN et al.**

No. 10510.

Court of Civil Appeals of Texas. San Antonio.

April 12, 1939.

Rehearing Denied May 17, 1939.

E. B. Ward, of Corpus Christi, for appellant.

Sidney P. Chandler, of Corpus Christi, for appellees.

MURRAY, Justice.

This suit was instituted by H. T. Brown and W. G. Winters against Edgar M. Linkenhoger, Jr., who uses the trade-name of Texas Star Oil Company, seeking to recover the value of 4,185 barrels of crude oil alleged to have belonged to Brown and Winters and to have been converted by Linkenhoger, Jr. The oil was alleged to have been of the value of forty to sixty cents per barrel.

The trial was to a jury, which, by its verdict, found:

"1. That plaintiffs, on or about June 1, 1936, impounded a quantity of waste crude oil on Petronila Creek within the Spessard land by constructing a board dam across said creek preventing said oil from continuing down said creek beyond the place of the dam.

"2. That the plaintiffs so impounded said oil prior to the time the defendant took any oil from Petronila Creek out of the Spessard land.

"3. That the defendant installed his Ford V–8 pick-up truck connected to his pump as a pumping unit on said Petronila Creek at a point on the creek where the plaintiffs had previously impounded a quantity of crude oil.

"4. That the defendant took or pumped away from said impounded oil with his Ford V–8 pick-up pumping unit, between the time he installed same on the creek and the time he removed same therefrom 2844 barrels of oil that had theretofore been impounded by plaintiffs on Petronila Creek in the Spessard land and which was then being held by the plaintiffs.

"5. That the market value of said oil at the creek at the time was forty cents per barrel.

"6. That it was agreed and understood between the plaintiffs and defendant that defendant would pay the plaintiffs forty cents per barrel for each and every barrel of oil that the defendant took and removed from said creek, and that the de-

fendant obligated and bound himself to take and remove said oil at his own expense.

"7. That in delivering the $4.84 check to the plaintiffs, it was not understood between the parties that the same was tendered by the said Linkenhoger in full settlement of plaintiffs' claims against him.

"8. That there was not a controversy existing between the parties plaintiffs and the party defendant to this suit over the amount that the defendant owed plaintiffs for the oil taken from Petronila Creek at or prior to the time of the delivery of the $4.84 check.

"9. That such controversy, if any, was not urged in good faith by the defendant Linkenhoger."

Upon this verdict judgment was entered in favor of Brown and Winters against Edgar M. Linkenhoger, Jr., in the principal sum of $1,257.43, from which judgment Linkenhoger has prosecuted this appeal.

The controversy in this suit grows out of the following facts:

In May, 1936, a well on the Kellam lease got out of control and blew out several thousand barrels of oil, which followed its natural course to Petronila Creek, and down Petronila Creek to the place where it was ultimately pumped into trucks and carried to market. The point where the oil was picked up was ten or twelve miles below the well. Under the facts, the oil was clearly fugitive, or waste, oil and belonged to the first taker who might reduce it to his possession. Kellam told Winters that he might have all of the oil that he could impound. This fact is unimportant, other than to show that Kellam did not intend to pursue the oil himself and try to recapture it. Brown got permission from one Spessard to impound the oil on Petronila Creek where it traverses the land belonging to Spessard. Brown built what is sometimes called a floating dam by nailing boards to the west side of a bridge on a county road. Spessard owned the land on both sides of this county road. The boards were nailed just below the level of the water so that the water could pass under the boards but the oil would be stopped by the boards. Brown also built another plank dam up the creek to prevent the wind or tide from taking the oil up the creek. This dam, it seems, could be taken down or placed back as it might be needed. To remove this oil from the creek, the appellees dug holes by the edge of the water in the side of the bank. These holes were two or three feet deep and three or four feet in diameter. Appellee then placed a board at the edge of the hole where it was in contact with the water's edge and drove the board down to the level of the water or a little above, this would permit the oil to run over the top of the board into these holes, with the oil thus separated from the water it could be pumped into tank trucks and hauled to market.

Linkenhoger bought 400 barrels of this oil from appellees, which was pumped into his tank trucks by appellees. He agreed to pay forty cents per barrel for this oil. Linkenhoger then put his own pump into the creek and pumped into his tank trucks a large quantity of this oil. Appellant refused to pay for this last quantity of oil on the ground that it was as much his oil as it was appellees'.

It is clear that appellant was unquestionably liable to appellees for the 400 barrels pumped by them into his tank trucks, in the sum of $160. This oil was paid for as follows: one check for $150; credit on account for the sum of $6.16, and a final check for $4.84. When this last check was introduced in evidence at the trial it had written upon it "Bal. of creek crude in full." However, appellees offered evidence to the effect that this was not written on the check until after they had cashed the same.

The jury found that the check was not given in settlement in full for the oil pumped from the creek by appellant with his own pump, but only as settlement in full for the 400 barrels pumped by appellees. This finding is challenged by appellant as being contrary to and unsupported by the evidence. The disposition we make of this case renders it unnecessary for us to pass upon this question.

The real question in this case is whether or not appellees had reduced this waste or fugitive oil to their possession when they constructed the floating dam across Petronila Creek and thus prevented the free flow of the oil on down the creek. The oil being unquestionably waste or fugitive oil, it would belong to the first taker, but that taker must actually take full possession of the oil. Caldwell-Guadalupe Pick-Up Stations v. Gregg, Tex.Civ.App., 276 S.W. 342, affirmed in

part and in part reversed and remanded, Tex.Com.App., 286 S.W. 1083; Humphreys Oil Co. v. Liles, Tex.Com.App., 277 S.W. 100; United North & South Oil Co., Inc., v. Mercer, Tex.Civ.App., 286 S.W. 652.

■ The only possession alleged by appellees was the construction of the floating dam across Petronila Creek, and the evidence shows this creek was a natural watercourse, from sixty to seventy-five feet wide, in which the tide ebbed and flowed. The evidence further shows that before possession could be fully accomplished this oil had to be drained into the pits on the side of the stream and pumped into tanks, otherwise the oil might be carried up the stream by the wind and the tide, or even down stream, as testified to by one witness.

It would seem that what was said by Judge German, of the Commission of Appeals, in Magnolia Petroleum Company v. Dodd, 125 Tex. 125, 81 S.W.2d 653, 655, is directly in point here. Judge German says:

"It is of course admitted that neither defendant in error nor his lessor, Hardeman, had any title to or interest in the abandoned waste oil floating on the waters of Seals creek. It is apparent that the situation of the land with reference to the creek did not of itself invest defendant in error or his lessor with any interest in the waste oil or with any special right to appropriate same different from or superior to the right of any one else. It is obvious that the waste oil had no relation to the beneficial use of the land abutting on Seals creek; nor did the presence of the oil on the water tend to confer on the land any added value or beneficial advantage.

"We are unable to conceive, therefore, how it can be said that even Hardeman himself had any 'riparian rights' so far as use of the stream for catching the waste oil was concerned, or how he could be considered a riparian owner in so far as possessing any right to obstruct the stream for the purpose only of catching the waste oil. If Hardeman was not a riparian owner in this regard, his lease to defendant in error could create no greater right than he had. Besides, it is to be noted that his contract did not attempt to confer on defendant in error any interest in the land as such, or anything more than a mere easement. It would be going a long way

to hold that the mere granting by lease of the 'privilege and right of erecting an oil catching station' on the land, 'with ingress or egress to said station,' and with the further privilege of building tanks, and laying pipe lines in connection with the station, conferred on defendant in error riparian rights which justified the obstruction of the stream in the manner indicated above. Richter v. Granite Mfg. Co. [107 Tex. 58, 174 S.W. 284, L.R.A.1916A, 504], supra; Bank of Hopinsville v. [Western Kentucky] Asylum [for Insane], 108 Ky. 357, 56 S.W. 525; Stoner v. Patten, 132 Ga. 178, 63 S.E. 897.

"Our conclusion is that in obstructing the stream defendant in error acted as a volunteer and at his peril, and plaintiff in error owed him no duty as a riparian owner, but only the duty not to intentionally or willfully injure his property. Defendant in error's suit, as shown above, was predicated on the theory that plaintiff in error as an upper riparian owner breached a duty due him as a lower riparian owner. It follows, therefore, that defendant in error had no pleading to support a cause of action upon the only theory under which plaintiff in error might have been liable to him."

It will be recalled, in the case at bar the floating dam was constructed by nailing boards to a bridge belonging to the county and used as a means of crossing Petronila Creek. It seems that appellant pumped the oil by stationing his pump upon this county bridge. When the appellees discovered appellant did not intend to pay them for their oil they moved their floating dam further up the creek where the oil could not be pumped from the bridge and appellant did not take any more of the oil.

The case does not seem to have been fully developed so it will not be here rendered, but rather the judgment will be reversed and the cause remanded for a new trial.

Reversed and remanded.

On Motion for Rehearing.

Appellees in their motion for a rehearing point out an inaccuracy in the original opinion which we are glad to correct. The oil involved in this suit was not pumped from the county bridge; only the first 400 barrels pumped by appellees into appellant's tank truck was pumped from the bridge. When appellant put his pump into the creek he did so from the bank, and

went upon the land of Spessard in doing so. However, we do not think this fact alone should change the conclusion to be reached.

Appellees further contend that inasmuch as the jury found that appellees had impounded the waste crude oil in Petronila Creek by nailing a board dam across the creek, and appellant has not presented an assignment of error asking that said finding be set aside for want of evidence to support it, that such finding is conclusive as to all parties and cannot be collaterally attacked. This contention is unquestionably true and this finding by the jury must be taken as conclusive. However, the fact that the jury found that appellees stopped or impounded the waste crude oil by constructing a board dam across the creek does not preclude an inquiry into whether or not waste oil thus stopped on a natural water course is in such possession of the person building the dam as to constitute him the owner of the oil.

We have considered appellees' motion for a rehearing and same will be overruled.