THE McGHEE IRRIGATION DITCH COMPANY V. A. W. HUDSON ET AL.

No. 20.

**1. Irrigation Statute — Arid Portion of Texas.** — The Act of 1889 (General Laws, page 100), relating to irrigation, is not inoperative because it does not declare what part of the territory of the State should be subject to its operation.

**2. Same — Arid Portion of the State.** — Under said statute. the "arid portion of the State," to which the act applied, is defined to be "lands in that part of the State where rainfall was insufficient for agricultural purposes, and irrigation therefore necessary." This as to any given tract of land is a question of fact, to be determined as any other fact; nor have courts judicial knowledge as to such facts.

**3. Injunction — Irrigation — Condemnation Proceedings.**—Injunction was sought against an irrigation ditch company to restrain it from taking lands of the plaintiffs for site for dam and for ditches. It appeared that condemnation proceedings were pending under the statute. There was no allegation that the land was not within the arid portion of the State. *Held,* error to grant a perpetual injunction.

**4. Injunction Proceedings — Burden of Proof.** — The plaintiffs, in seeking a perpetual injunction, had the burden of showing facts authorizing its issuance. Failure to allege that the land was not arid was fundamental defect.

ON MOTION FOR REHEARING.

**5. Effect of Act of March 19, 1889 — Granting Water Rights.—** Section 2 of the Act of 1889 (General Laws, page 100) can not operate, and probably was not intended to operate, on the rights of riparian owners existing when the law was passed, but was intended to operate only on such interests as were in the State by reason of its ownership of lands bordering on rivers or natural streams.

**6. Right to Condemn for Ditch Companies.—** The Act of March 19, 1889, gives to such corporations the right to condemn any property necessary for the uses and purposes of the enterprise in the business for which the corporation was created, if such property will pass or may be included under the term "lands."

**7. Lands.—** Under the power to condemn lands would be included the right to take *water*, but the water should be paid for, regardless of whether taken above or upon the land of a riparian owner whose right to have the water flow in its accustomed course and quantity is invaded.

ERROR to Court of Civil Appeals, Third District, in a case on appeal from Sterling County.

The opinions give a sufficient statement.

*B. W. Rimes*, for appellants.—As this is an agreed case, the only proposition relied on by appellant for reversal is the error committed by the trial judge in perpetuating the injunction. It is agreed, that appellant is a chartered irrigating company, chartered under the laws of Texas, and was seeking to erect said dam, and condemn the right of way across the land in controversy, under their chartered rights, for irrigating purposes, under condemnation proceedings as applicable to railroads, in said County Court of Sterling County, when arrested by the injunction sued out in this case. Act of 1889; Sayles' Civ. Stats., art. 3000, sec. 11; Irrigation Co. v. Vivian, 74 Texas, 174; Conger v. Weaver, 6 Cal., 548; Suth. on Stat. Con., 385, et seq.

*Ball & Burney*, for appellees.—The trial court did not err in perpetuating the injunction and holding the said act of the Twenty-first Legislature, chapter 88, passed March 19, 1889 (General Laws 1889, page 100, et seq.), inoperative and void because of its indefiniteness in failing to designate with certainty, and by its own terms, what boundaries constituted the arid districts of Texas, and therefore where and when the said law was applicable.

STAYTON, CHIEF JUSTICE.—The case made by the petition of defendants in error is, that plaintiff in error was prosecuting proceedings to condemn so much of their land as was necessary for the construction of a dam across the Concho River and the opening of a ditch, all to be used for irrigation purposes; but that before these proceedings were consummated plaintiff in error had entered upon the land, and had erected the dam, and was engaged in opening the ditch.

The petition also developed the fact that an award had been made by a jury appointed for that purpose, but it is not made clear whether the intention was to aver that no decree had been entered on the award, or whether, after this was done, plaintiffs had prosecuted an appeal from that decree, which was pending when this suit was instituted.

Plaintiffs asked a perpetual injunction, but made no averment that facts did not exist which, under the law, would entitle defendant to condemn so much of the land as was necessary for its use.

The answer showed, that the defendant was a corporation, chartered under the general law, for irrigation purposes, and that it had taken the steps necessary under the law to condemn the land, which resulted in an award of damages, which had been complied with by a deposit of the sum awarded before entering upon the land, and the sum awarded was tendered.

The answer claimed the right to use the land by reason of these facts.

By a supplemental petition, plaintiffs denied the sufficiency of the proceedings to condemn the land, and called in question the validity of the statute on which the proceeding was based.

A temporary injunction was awarded, and on hearing this was perpetuated.

The case was tried without a jury, on an agreed statement, which showed the incorporation of the defendant company for irrigation purposes, and that "proceedings were and are pending in County Court, Sterling County, case number 1, whereby and wherein defendant irrigation company was and is attempting to have the land occupied and used by said ditch condemned under their chartered rights as provided in cases of railways."

Neither the answer nor the agreed statement of facts showed that the land was "within the arid portion of the State of Texas;" nor does the record show on what ground the injunction was perpetuated.

The case was briefed mainly on the theory that the trial court held the act under which condemnation was sought invalid, because it did not declare what part of the territory of the State should be subject to its operation.

The first section of the act, which authorizes the condemnation of land for irrigation purposes, and provides the method in which this may be done, is as follows:

"Be it enacted by the Legislature of the State of Texas: That the unappropriated waters of every river or natural stream within the arid portions of the State of Texas, in which, by reason of the insufficient rainfall, irrigation is necessary for agricultural purposes, may be diverted from its natural channel for irrigation, domestic, and other beneficial uses; provided, that said water shall not be diverted so as to deprive any person who claims, owns, or holds a primary right or title to any land lying along

the bank or margin of any river or natural stream of the use of the water thereof for his own domestic use." Gen. Laws, 1889, p. 100.

The Court of Civil Appeals held, that the act was not inoperative because of its failure to designate the territory which should be deemed the " arid portion of the State of Texas;" that this would have probably been impracticable; but that lands in that part of the State where rainfall was insufficient for agricultural purposes, and irrigation therefore necessary, should be deemed lands to which the act applied; that this was a question of fact, to be determined as any other fact.

We concur in the opinion of that court in so far, and in the reasoning on which the court reached that conclusion.

We concur in the further holding of that court, to the effect that courts had not judicial knowledge of what territory was or might be embraced within the words " the arid portion of the State of Texas;" and that in cases in which corporations may wish to condemn lands under the act, it will be necessary for them to prove that in the particular territory, " by reason of the insufficient rainfall, irrigation is necessary for agricultural purposes."

There was neither proof nor averment of that fact by either party, nor was it denied that such was the character of the country in which the land is situated; and were this a proceeding to condemn the land, the absence of such proof would be fatal to the right to condemn.

The agreed facts show that the steps taken to condemn were such as the statute prescribes, and the question arises, whether the Court of Civil Appeals was correct in holding that the judgment perpetuating the injunction ought to be affirmed, because " the defendant did not plead that the stream was in an arid portion of the State, where the rainfall was insufficient, and that irrigation was necessary for agricultural purposes."

It must be conceded, that under the pleadings and agreed facts, plaintiffs were entitled to a temporary injunction, restraining the defendant from using the land prior to such time as it might acquire the right through condemnation; but neither the pleadings of the plaintiffs nor the agreed facts showed a case in which a perpetual injunction should be granted, whereby the defendant could be deprived of the right for all time to come, through proceeding then pending, to acquire right to use the land for the purposes proposed.

Plaintiffs were seeking affirmative relief, and the burden was upon them to show, by pleading and proof, that they were entitled to a perpetual injunction. This they did not in either manner, and it was error, fundamental in character, to grant a perpetual injunction under such circumstances; and for this reason the judgment of the District Court will, be reversed and the cause remanded.

                                        *Reversed and remanded.*

Delivered May 18, 1893.

### ON MOTION FOR REHEARING.

*Ball & Burney*, for motion for rehearing. — 1.  The act of 1889 upon the subject of irrigation is not a general law, and we believe every law not applicable to the whole State must by its terms define the territory that is to be subject to its operation.    Under this act, the first inquiry of the court or jury must be as to whether the irrigation law extends to the particular locality in question.    *   *   *

2.  But there is a more serious objection to this act, not directly raised or expressly stated in the pleading or brief in this case.    Is it not violative of article 1, section 17, of our State Constitution ?    Does it not provide for the condemnation of private property for other than a public use, and without providing for complete compensation ?    It will be observed, that the act by one stroke attempts to divert and take from the private owner his vested property right in the water and watercourse that runs through his land, and vest the same in the public, without compensation of any character to the owner.    Appellee '' owns the stream of water flowing through his land as fully as he owns the stones scattered over it.''    6 Wait's Act. and Def., 259;  Pome. on Ripar. Rights, sec. 159; Gould on Waters, secs. 46, 204;  Ang. on Watercourses, sec. 5, et seq. By virtue of such ownership he is entitled to have the water flow through his land in its natural channel;  and this right can not be diverted by legislative act, or otherwise, and vested in the public, as is sought to be done in section 2 of this statute, without compensation.    It is a property right.    Irrigation Co. v. Vivian, 74 Texas, 170.

3.  If the law is valid, upon whom devolved the burden in this case of alleging and proving that Sterling County is '' within the arid portions of the State, in which, by reason of the insufficient rainfall, irrigation is necessary for agricultural purposes ? ''    Appellee's case was made by showing that appellant had come upon his enclosure, and was there committing a trespass in its nature continuous.    Then appellant undertakes to justify this act by saying that Sterling County is within the arid portion of the State.    Although appellee was seeking affirmative relief. it was not necessary to prove a negative.    *   *   *

STAYTON, CHIEF JUSTICE.—We see no reason to doubt the correctness of the views expressed by the Court of Civil Appeals in reference to the validity of the statute, in so far as considered by that court; nor do we think that the act is a special or local law within the meaning of that part of the Constitution regulating the passage of such laws.

Section 2 of the act can not operate, and probably was not intended to operate, on the rights of riparian owners existing when the law was passed, but was intended to operate only on such interests as were in the State by reason of its ownership of lands bordering on rivers or natural streams;

and it may be that there are some other parts of the act that would have to be so limited.

It is urged, that the act only provides for condemnation of right of way, or ground on which the ditch is to be constructed, and does not provide for a compensation for injury resulting from a taking of water from the stream which flows through plaintiffs' land. The act provides, that "any such corporation may also obtain the right of way over private lands by condemnation, by causing the damages for any private property appropriated by such corporations or associations to be assessed and paid for, as provided in cases of railroads." Gen. Laws 1889, p. 102.

The general law providing for the incorporation of canal companies contains the following, among the powers conferred on such corporations: "To enter upon and condemn and appropriate any land of any person or corporation that may be necessary for the uses and purposes of said company; the damages for any property thus appropriated to be assessed and paid for in the same manner as is provided by law in the case of railroads." Rev. Stats., art. 628, sec. 6.

The law first quoted evidently only provides for condemnation of ground over which an irrigation ditch might run, and in the absence of a law providing for the condemnation of every property necessarily taken in such an enterprise, no right to condemn would exist.

The Act of March 19, 1889, in so far as it provides for condemnation, however, is not in conflict with article 228, Revised Statutes.

The provisions of the latter are broader than the former, and under the former the power therein given to enter upon, condemn, and appropriate lands, we are of opinion that any property belonging to plaintiffs and necessary for the uses and purposes of defendant, in the business for which it was created, may be condemned, if it will pass or may be included under the term "lands."

"The word land includes not only the soil, but everything attached to it, whether attached by the course of nature, as trees, herbage, and water, or by the hand of man, as buildings and fences." 1 Wash., 4; 2 Wash., 367; 2 Black., 18; Carey v. Daniels, 8 Metc., 480; Lux v. Haggin, 69 Cal., 255; Scriven v. Smith, 100 N. Y., 480.

In disposing of this case, under the pleadings, we must assume that the steps taken were proper steps to condemn, and that plaintiffs' rights were such as could not be taken without condemnation and compensation.

So looking at the case, it is very clear that it was their right to have the water flow through their land in its accustomed channel, and to use it for all purposes for which a riparian proprietor may use water so flowing.

If defendants divert the water, in so far as they do so they, in effect, take land, and must make compensation to plaintiffs for such deprivation

of right, as well as for the land on which their dam and ditch were constructed or to be constructed.

It appears that the dam as well as the ditch was on plaintiffs' land, and that a taking of the soil as well as water was necessary for defendant's purposes; and this makes a case in which plaintiffs are entitled to compensation for any property right of which they are to be divested.

If, however, the water was taken out of the stream above plaintiffs' land, to be used for a public purpose, this would not affect their right to compensation, measured by the value of the right divested; for their right to use the water for proper purposes can not be taken away without compensation.

Article 628, Revised Statutes, only provides, that the procedure shall be the same as railway companies are required to pursue in condemning property for their necessary use, and does not undertake to fix the measure of damages in cases to which it applies.

That must be determined by the general rules of law applicable to the case, and whether the taking is necessary and for a public use must be determined before the property can be taken.

If plaintiffs desired a perpetual injunction, it is clear that it was incumbent on them to allege and prove the facts necessary to entitle them to such relief.

We can now only act on the case made, but have deemed it proper to express the views herein given for the guidance of the parties and the court in further proceedings to be had in the case as it now appears.

The motion for rehearing will be overruled.

<em>Motion refused.</em>

Delivered June 22, 1893.