In re the ADJUDICATION OF the UP-
PER GUADALUPE RIVER SEGMENT
OF the GUADALUPE RIVER BASIN.

No. 16475.

Court of Civil Appeals of Texas,
San Antonio.

July 24, 1981.

Rehearing Denied Aug. 28, 1981.

Elbert Hooper, Hooper, Robinson & Moeler, Austin, Darrell G. Lochte, Edgar A. Wallace, Wallace & Jackson, Kerrville, for appellant.

Douglas G. Caroom, Asst. Atty. Gen., Austin, for appellee.

OPINION

KLINGEMAN, Justice.

This is an appeal by John Duncan (Duncan) and Shelton Land & Cattle Company et al. (Shelton) of a decision of the District Court of Bexar County, Texas, affirming the Texas Water Rights Commission's Final Determination in all regards,[1] including the Commission's determination of navigability, the Commission's determination that riparian rights do not exist on lands granted after 1895, and the Commission's determination that riparian waters may not be used to irrigate non-riparian land. The trial court also held that the Texas Water Rights Adjudication Act is constitutional in all respects. Findings of Fact and Conclusions of Law were filed by the trial court.[2]

Although there are two sets of appellants, some points of error are common to both. Appellant Duncan's brief is addressed primarily to the navigability issues and the issue of riparian irrigation rights in lands sold by the State. Appellant Shelton complains of these issues also, and urges that the trial court erred in affirming the Final Determination of the Texas Water Rights Commission. Most of appellant Shelton's complaints, however, are to the constitutionality of the Texas Water Rights Act.

Appellants' contentions may be summarized as follows: (1) The issue of navigability became moot by virtue of the Commission's finding that riparian landowners had the right to maintain and use dams and reservoirs under the reasonable use concept regardless of navigability; (2) the Water Rights Commission has no jurisdiction or authority to determine navigability; (3) the evidence was insufficient to support a find-

1. Pursuant to the Water Rights Adjudication Act, the Texas Water Rights Commission made a Final Determination in 1977 with regard to the water rights of landowners who own property along the Upper Guadalupe Segment of the Guadalupe River Basin. Some of such landowners who are the appellants herein filed exceptions to the Commission's Final Determination in the District Court. The District Court, after a non-jury trial, affirmed the Final Determination in all respects.

2. In its Findings of Fact and Conclusions of Law the trial court (1) adopted all findings of fact and conclusions of law of the Texas Water Rights Commission dated March 28, 1972; (2) found that the north fork and south fork of the Guadalupe River maintained an average width substantially greater than 30 feet from the mouths up to the area in any claim asserted in this adjudication; (3) concluded (a) that the north fork and the south fork of the Guadalupe River are navigable water courses from their mouths up to the area in any claim asserted in this adjudication; (b) the maintenance of any dam or reservoir on the north fork of the Guadalupe River which was recognized as a part of a riparian right must not unreasonably impair the public's right of navigation and access to and enjoyment of a navigable water course; and (4) found and concluded that the Texas Water Rights Adjudication Act is constitutional in all regards and constitutional as applied to all claimants of water rights herein.

ing of navigability; (4) riparian rights had vested in the lands; (5) riparian waters can be diverted to non-riparian lands under certain circumstances; (6) the action of the Water Rights Commission operated to take vested rights without compensation; (7) the action of the Commission is ex post facto in nature and results in impairment of contracts; (8) the action of the Commission violates due process; (9) the action of the Commission is an impairment of the landowners' title to the stream beds; (10) the action of the Commission constitutes an outright taking of riparian rights without compensation; (11) the trial court should have adopted appellants' findings of fact and conclusions of law; (12) the Commission's Final Determination is an unauthorized exercise of judicial authority; and (13) the independent review standard set forth in the Water Code is unconstitutional.

Appellee, the State of Texas, asks that this court uphold the constitutionality of the Texas Water Rights Adjudication Act in all respects and affirm the judgment of the trial court in all things. Appellee urges that (1) the Water Rights Act does not take or destroy vested rights by simply imposing a limitation on the unexercised or unvested portion of such water rights; (2) the Water Rights Act may constitutionally affect water rights and impose limitations on their use in the interest of conservation of water and the public welfare; (3) the district court correctly held that riparian rights do not attach to lands upon which title passed from the State after July 1, 1895; (4) the district court properly held that riparian waters cannot be used on non-riparian lands; (5) the district court correctly held that the north and south forks of the Guadalupe River are navigable streams within the meaning of Section 21.001(3) of the Texas Natural Resources Code; (6) the Water Rights Act does not violate Article II, section 1, or Article V, section 1, of the Texas Constitution by conferring judicial powers on an administrative agency and the Commission is not performing judicial functions since the final review is by the court; (7) Section 11.320 of the Water Rights Act providing for independent review by the

court is constitutional; (8) the trial court did not err in failing to adopt appellants' proposed findings of fact and conclusions of law; (9) the Water Code is constitutional because it is enacted in the interest of conservation of water and public welfare, under constitutional authority.

We basically agree with appellee's contentions and affirm the judgment of the trial court. It is clear that prior to the passage of the current Water Rights Adjudication Act Texas water law was in a state of great confusion. One court remarked that Texas water laws and decisions are in hopeless confusion and their application would be difficult; that such laws confer little real authority upon the State Board of Engineers; that permits have been granted on many streams and if riparian rights are given the full effect for which plaintiffs contend practically every drop of water, normal flow or flood is bespoken. *Martinez v. Maverick County Water Control & Improvement District No. 1*, 219 F.2d 666 (5th Cir. 1955).

A notable example of problems involved, including the complexity and length of litigation is demonstrated in *State v. Hidalgo County Water Control & Improvement District No. Eighteen*, 443 S.W.2d 728 (Tex.Civ. App.—Corpus Christi 1969, writ ref'd n.r.e.), which took over thirteen years to decide, involved approximately 3,000 parties and cost an estimated $10 million in court costs and attorneys' fees. In an effort to clear up such confusion the Texas Water Rights Adjudication Act was passed.

The Water Rights Adjudication Acts passed by the western states are primarily divided into three types: (a) the Colorado type Act which is entirely a court adjudication conducted before special water judges; (b) the Wyoming type Act, which is an entirely administrative adjudication in which the agency's decision is final unless appealed to the courts under the normal review of administrative decisions procedure; and (c) the Oregon type Act which consists of a two-step procedure—an initial determination by the administrative agency followed by automatic judicial review, with

the final decision of contested issues being made by the courts. The Texas Act is generally the Oregon type, with some variations.

Appellants' points may be classified into three general categories: (1) riparian issues; (2) navigability issues; and (3) constitutional issues. They will be so discussed in this opinion.

The conservation amendment, Article XVI, section 59(a), provides:

The conservation and development of all the natural resources of this State, including the control, storing, preservation and distribution of its storm and flood waters, the water of its rivers and streams, for irrigation, power and all other useful purposes, the reclamation and irrigation of its arid, semi-arid and other lands needing irrigation, the reclamation and drainage of its overflowed lands, and other lands needing drainage, the conservation and development of its forests, water and hydro-electric power, the navigation of its inland and coastal waters, and the preservation and conservation of all such natural resources of the State are each and all hereby declared public rights and duties; and the Legislature shall pass all such laws as may be appropriate thereto.

Section 11.302 of the Water Act, Declaration of Policies, states as follows:

The conservation and best utilization of the water resources of this state are a public necessity, and it is in the interest of the people of the state to require recordation with the commission of claims of water rights which are presently unrecorded, to limit the exercise of these claims to actual use, and to provide for the adjudication and administration of water rights to the end that the surface-water resources of the state may be put to their greatest beneficial use. Therefore, this subchapter is in furtherance of the public rights, duties and functions mentioned in this section and in response to the mandate expressed in Article XVI, Section 59 of the Texas Constitution and is in the exercise of the police powers of the state in the interest of the public welfare.

### Riparian Rights

An article written in 1954 by Frank J. Trelease, a professor of law at the University of Washington, entitled, *Coordination of Riparian and Appropriative Rights to the Use of Water*, points out common problems in the western states pertaining to riparian rights, wherein it is stated:

In 1943 the National Resources Planning Board published *State Water Law in the Development of the West*, the end product of a comprehensive study which concluded that "... the existence of unused riparian rights in some States is a formidable obstacle to the best utilization of water." Today such rights are protected in California, North Dakota, Oklahoma, South Dakota, Texas and possibly Kansas. In each of these states the problem is different, but the ultimate goal the same—to get the maximum benefit from the water available.

It is doubtful that this can ever be accomplished under riparian law with its correlative but uncertain rights fluctuating as the stream rises and falls and as demands increase or decrease, limiting the benefits of development to a few persons favored because of the location of their lands and administered by slow and expensive litigation in the courts. The ultimate coordination of appropriation and riparian rights into an integrated system lies in the adoption of some variant of the "Oregon plan" by which existing riparian uses are vested and stabilized and future development is carried on under the law of appropriation without regard to the location of the water use.

Trelease, *Coordination of Riparian and Appropriative Rights to the Use of Water*, 33 Tex.L.Rev. 24 (1954).

The Texas Water Code, section 11.001(b), states "this Code does not recognize any riparian right in the owner of any land the title to which passed out of the State of Texas after July 1, 1895."

Appellant Shelton attacks the constitutionality of the Act on many grounds including his contentions that it operates to take vested private riparian rights from the owner without compensation; that it violates the Constitutional provisions as to ipso facto laws and retroactively impairs the obligations of outstanding contracts; and that it violates due process provisions of the Constitutions, both State and Federal.

Shelton argues that riparian water is land and that beginning in 1840, and continuing until the effective date of the Water Code, every parcel of land patented to an individual or corporation that was bounded or crossed by a stream carried with it full and complete riparian rights, as part of the land itself.

■ We find no substantial basis for appellant's contention in this regard. The riparian right is one of use only; it does not carry with it ownership in the corpus of the water itself. *Magnolia Petroleum Co. v. Dodd*, 125 Tex. 125, 129, 81 S.W.2d 653, 655 (1935); *Texas Co. v. Burkett*, 117 Tex. 16, 25, 296 S.W. 273, 276 (1927); *Rhodes v. Whitehead*, 27 Tex. 304, 309 (1863). Riparian rights can attach only to water below the "line of highest ordinary flow." Under the common law as it has been applied in Texas, the riparian property rights extended to the reasonable use of the riparian waters. This reasonable use was limited, however, so that the owner had no right to use the water in such a way as to cause substantial injury to the common right of other riparian owners. *Motl v. Boyd*, 116 Tex. 82, 100, 286 S.W. 458, 470 (1926); *Great American Development Co. v. Smith*, 303 S.W.2d 861, 864 (Tex.Civ.App.—Austin 1957, no writ); *Stacy v. Delery*, 57 Tex.Civ. App. 242, 122 S.W. 300, 303 (Tex.Civ.App., 1909, no writ).

The riparian water right is derived from common law. In England, the proprietor of each bank of a stream had an equal right to use water which flowed in the stream. The original Spanish-Mexican Land Grants in Texas did not carry with them riparian water rights except where there was a specific grant of riparian rights by the sovereign. In 1840, the Republic of Texas adopted the English common law, and, accordingly, the doctrine of riparian water rights. As such, all grants of lands by the State from 1840 through July 1, 1895, carried with them riparian rights. In 1895, however, Texas reverted to the civil law and in so doing provided that land granted by the State after July 1, 1895, did not include riparian rights.[3]

A. W. Walker, Jr., in his comprehensive article entitled, *Legal History of the Riparian Right of Irrigation in Texas Since 1836*, Proceedings—Water Law Conference (1959), discusses in considerable detail the history of riparian rights including both legislative acts and case decisions from about the year 1840 to the date of Mr. Walker's article, 1959. Professor Walker points out that all of the early acts failed to disclose a legislative intent to grant a vested property right to use water for irrigation purposes in all patentees of land riparian to a stream. He notes these acts are indicative of an existing permitted use, not of a vested property right granted by the sovereign without any immunity from subsequent legislative control. It is only natural in a semi-arid state such as Texas that the use and distribution of water should be a matter of legislative control.

■ In 1889, the legislature passed the Appropriation Act of March 19, 1889. This Act was brought on in part by the severe drought which commenced in 1885 and which led to the passage of the Drought Relief Act of 1887. The Act of 1889 declared that the unappropriated water of every river or natural stream within arid parts of the State of Texas, in which, by reason of insufficient rainfall, irrigation is necessary for agricultural purposes "to be the property of the public" and authorized such waters to be diverted from streams for use "for irrigation, domestic and other ben-

3. *See* Comment, *Riparian Rights Under the Texas Water Rights Adjudication Act—A Con-* *stitutional Analysis*, 9 St. Mary's L.J. (1977).

eficial uses" by persons acquiring a right of appropriation under the terms of the Act. Thereafter, and within the limits of its powers as recognized by the courts, the legislature continued to express its opposition to the recognition of riparian right of irrigation. In the subsequent Appropriation Acts of 1913 and 1917, while disavowing any intention to impair existing vested rights, the legislature expressly provided that nothing in the statutes enacted by it should *"be construed as a recognition of any riparian right in the owner of any lands the title of which shall have passed out of the State of Texas subsequent to the first day of July A.D. 1895."* This has been our state policy as unmistakenly announced by statutes that have been in force for a great number of years.

Appellants' main complaint as to the constitutionality of the Act is that it allegedly deprives riparian owners of certain vested property rights, including irrigation rights, without compensation and without due process. The State's answer is that the Act does not take or destroy vested water rights but it simply imposes a limitation on the unexercised and unvested portion of such water rights.

It is seen from the hereinabove discussion that the legislature, for a period of approximately 80 years, has continued to express an intention to limit the rights of riparian owners, including the so-called right of nonuse. Appellants cite and rely heavily on early court decisions such as *Motl v. Boyd, supra,* 286 S.W. at 458; *Bigham Bros. v. Port Arthur Canal & Dock Co.,* 100 Tex. 192, 97 S.W. 686 (1906); *Watkins Land Co. v. Clements,* 98 Tex. 578, 86 S.W. 733 (1905); *Mud Creek Irr., Agr. & Manuf'g Co. v. Vivian,* 74 Tex. 170, 11 S.W. 1078 (1889); and *Fleming v. Davis,* 37 Tex. 173 (1872).

In *Miller v. Letzerich,* 121 Tex. 248, 49 S.W.2d 404 (1932), the Texas Supreme Court stated:

It is elementary that the rules of the common law governing the use of property may be changed and a cause of action prescribed where none existed before, or statutory actions and remedies in some instances may be substituted for previously existing rights and remedies under the common law.

The court also stated:

As to lands granted since 1840 the proprietors had no vested right in the rule of decision prescribed by the adoption of the common law.

Appellees contend and we agree that the legislature's limitation of riparian rights, if such limitation has occurred, can be considered nothing more than the modification of a rule of decision in the early cases relied on by appellants and it is within the province of the legislature to modify or change such rules of decision.

The approach taken by the Kansas Court in *State v. Knapp,* 167 Kan. 546, 207 P.2d 440 (Kan.1949) is persuasive. In such case the Kansas Supreme Court approved a legislative declaration that all water in the state was public and subject to regulation, in spite of the fact that Kansas then recognized the riparian system. The issue, as it related to groundwater, was subsequently reconsidered by a three-judge federal court in *Baumann v. Smrha,* 145 F.Supp. 617 (D.Kan.1956), *aff'd,* 352 U.S. 863, 77 S.Ct. 96, 1 L.Ed.2d 73 (1956). The court stated:

The power of a state either to modify or reject the doctrine of riparian rights because unsuited to the conditions in the state and to put into force the doctrine of prior appropriation and application to beneficial use or of reasonable use has long been settled by the adjudicated cases.

Of course, such a modification in the law of the state must recognize valid existing vested rights, but we do not regard a landowner as having a vested right in underground waters underlying his land which he has not appropriated and applied to beneficial use.

We hold that the state could properly apply the doctrine of prior appropriation and application to beneficial use to unused and unappropriated waters so long as it recognized and afforded protection to rights which landowners had acquired at the time of the effective date of the Act to appropriate and use water.

. . . .

There is no vested right in the decisions of a court and a change of decision does not deprive one of equal protection of the laws or property without due process of law.

*Id.* at 624–25. [citations omitted]

 Like Kansas, the Texas Legislature has considered riparian rights vested only to the extent they actually exist and are being used. If this constitutes a modification of the existing rules of decision, such a modification is within the legislature's power.

 Additionally, the constitutionality of the Texas Water Rights Adjudication Act can be sustained either as an exercise of the legislature's authority under the Conservation Amendment or as a legislative exercise of the police power in the interest of protecting the public welfare. The Supreme Court of Texas in *Texas Water Rights Commission v. Wright*, 464 S.W.2d 642 (Tex. 1971), stated:

Inherently attached to a permit to appropriate waters, therefore, is the duty that the appropriator will beneficially use the water. The State, in administering its water resources, is under a constitutional duty to conserve water as a precious resource and that duty is also inherent in the grant of a water permit. In 1917, Texas adopted Article XVI, Section 59, of the Texas Constitution, commonly called the Conservation Amendment. Naming waters specifically, the amendment declared that the conservation and preservation of natural resources are public rights and duties. It then ordered that 'the Legislature shall pass all such laws as may be appropriate thereto.' The statutes with which we are here concerned were enacted as a part of that program for the development, preservation and conservation of the State's natural resources. *Clark v. Briscoe Irr. Co.*, 200 S.W. 674 (Tex.Civ.App.1947, no writ).

*Id.* at 648. The court further stated:

The permittees did not acquire the right of non-use of water. Common to the law of the western arid regions and of appropriation law generally is the idea that non-use of appropriated waters is a waste of the water. Once water is appropriated, its availability to another user is reduced or defeated, and if the permittee does not use a substantial portion of it the water will run unused into the sea. The workable system of appropriated waters has produced the general rule that the beneficial use of waters is the conservation of the resource, whereas, the non-use of appropriated waters is equivalent to a waste. [citations omitted]

*Id.* at 647.

In *Corzelius v. Harrell*, 143 Tex. 509, 186 S.W.2d 961 (1945), the supreme court considered the authority of the Railroad Commission to adjust correlative rights of owners of gas in a common reservoir. The court relied heavily upon the Conservation Amendment in upholding the constitutionality of the legislative action authorizing this regulation of property rights and stated:

By the use of the broad language used in Article XVI, Section 59a, the Legislature is authorized to enact such laws as are necessary to carry out the purposes for which such constitutional amendment was adopted. The statutes involved here confer upon the Railroad Commission the power to adjust correlative rights in gas fields, but all of its orders are subject to review by the courts, as provided for in Article 6049(c), Section 8. In view of the broad provisions of Article XVI, Section 59a, authorizing the Legislature to pass all laws that may be appropriate for the conservation and development of all natural resources, and in view of the fact that the statutes provide for a full review in the courts of all orders entered by the Railroad Commission, we are of the opinion that the statutes which authorize the Railroad Commission to adjust correlative rights of owners in a common gas reservoir do not violate the provisions of Article II, Section 1, of the Constitution.

*Id.* 186 S.W.2d at 964.

There is a good discussion of the exercise of the police power in *Lombardo v. City of*

*Dallas,* 124 Tex. 1, 73 S.W.2d 475 (1934), where the court stated: "The insistence that the right of property or the *unrestricted use* of property is not subject to the police power has long since been determined adversely to that contention." The court indicated that the general rule is that:

> *All property is held subject to the valid exercise of the police power; nor are regulations unconstitutional merely because they operate as a restraint upon private rights of person or property or will result in loss to individuals.* The infliction of such loss is not a deprivation of property without due process of law; the exertion of the police power upon subjects lying within its scope, in a proper and lawful manner, is due process of law."

*Id.* 73 S.W.2d at 478.

 It is clear that in certain instances the police power may be exerted to regulate the use, and where appropriate or necessary prohibit the use of property for certain purposes in aid of the public health, morals, safety, and general welfare, and that the constitutional limitations form no impediment to its exertion where the enactment is reasonable and bears a fair relationship to the object sought to be attained.

 Another riparian rights issue raised by appellants is that the court erred in not recognizing a right of application of riparian water to non-riparian lands. In *Watkins Land Co. v. Clements,* 98 Tex. 578, 86 S.W. 733 (1905), it was stated that a riparian proprietor cannot ordinarily divert water to land lying beyond the watershed of the stream although conditions might exist which would authorize such use. *See* 60 Tex.Jur.2d 391, § 73 (1964). There is no absolute right to use riparian water on non-riparian lands and therefore the court did not err in refusing to recognize such a right.

We have concluded that the Texas Adjudication Act is a lawful and valid legislative exercise of authority granted under the constitutional amendment to the Texas Constitution and also the police power in the interest of public welfare.

*Navigability Issue*

The Water Rights Commission in its final determination found that both the north and south forks of the Guadalupe River are navigable, that is, they retain the average width of 30 feet from the mouth up. Nat. Res.Code § 21.001(3) (Vernon 1978). The trial court affirmed such finding and made findings of fact to the same effect. Appellants contend such findings of navigability are erroneous because (1) the issue of navigability became moot by virtue of the Commission's finding that riparian land owners had the right to maintain the new dams and reservoirs under the reasonable use concept, regardless of navigability; (2) the Commission lacked jurisdiction and authority to make the determination of navigability; (3) the evidence was insufficient to support the conclusion of navigability; (4) the findings made by the Commission and affirmed by the court is an impairment of title of appellants; (5) the Commission, by making a navigability finding, exercised a non-permitted judicial function; and (6) such finding is barred by Article 5329, the one-year statute of limitations. We disagree.

 The Commission's navigability determination is not moot. It recognizes such rights only to the extent that they do not unreasonably interfere with the overriding public rights in navigable streams. If the streams were not navigable, no such limitations on their riparian rights would exist. Moreover, a navigability determination is necessary because of its prospective effects on the right to construct reservoirs and dams on the north and south forks.

The finding of navigability was necessary in order for the Commission to further adjudicate the rights of owners along the river as it is authorized to do. If the river were non-navigable the Commission would not have been authorized to limit the maintenance of dams and reservoirs on the river as it did.

 Appellants also contend that the Commission lacked jurisdiction to make a determination of navigability and that by

making a navigability finding the Commission exercised an unpermitted judicial finding. In support thereof appellants cite *State v. Bradford,* 121 Tex. 515, 50 S.W.2d 1065 (1932), to the effect that the determination of navigability is essentially a judicial function. In conducting the adjudication the Commission is required to determine every water right existing on the applicable river or stream. This requires that the Commission must determine navigability in many instances. The Supreme Court of Texas in *Corzelius v. Harrell, supra,* held that the Conservation Amendment gave the legislature power to carry out the purposes of such amendment. The Commission's findings under the Adjudication Act is clearly not judicial. The final decision on all disputed issues is left to the court. In *Corzelius v. Harrell, supra,* the supreme court considered the constitutionality of a statute authorizing the Railroad Commission to adjust the correlative rights of owners of a common gas reservoir. The specific attack on the statute was that it violated the separation of powers and conferred judicial powers upon an administrative agency. The court squarely held, based upon the Conservation Amendment, that no violation of separation of powers was involved and that no judicial powers were conferred upon the administrative agency.

We hold that the Commission had jurisdiction and was authorized to make the determination of navigability under the authority of Article XVI, section 59, of the Texas Constitution, and the provisions of the Texas Water Rights Adjudication Act.

▮ Appellant Shelton also urges that the finding of navigability is an impairment of title of appellants and that such finding is barred by Article 5329, the one-year statute of limitations. We find no merit in this contention. These appellants assert that as patentees from the State they are the owners of the stream beds and that the acts of the Commission are an attempt to determine title to the stream beds or an attempt to obtain title to such property. There is nothing in the record to indicate that the Commission is in any way questioning the title of appellants and title is not an issue in the adjudication. The title of owners of beds of streams by the State or landowners does not determine property rights in the water. Assuming that the property owners here involved own the stream beds, this does not deprive the State from reasonable regulations and control of navigable streams. A property owner, including holders of riparian rights, cannot unreasonably impair the public's rights of navigation and access to and enjoyment of a navigable water course.

▮ Appellant Shelton's reliance on the one-year statute of limitations is misplaced. The statute in question provides: "No sale made without condition of settlement may be questioned by the state or any other person after one year from the date of the sale." The one-year statute was aimed primarily at the situation where the State or some other party was attempting to set the entire transaction aside. We have found no cases involving the application of the one-year statute to water rights. There is nothing in the record to indicate that the State is here questioning the title of any of appellant's land or attempting to set aside any sale. The one-year statute is not involved in this case.

▮ Appellants also urge that the evidence is insufficient to support the finding of navigability. A navigable stream is one that maintains an average width of thirty feet from the mouth up. The trial court found that both the north and south forks of the Guadalupe River are of an average width of substantially greater than thirty feet from the mouth up to the area of any claim asserted in this adjudication. The trial court also found that the north fork and the south fork of the Guadalupe River are navigable water sources from the mouth up to the area of any claim asserted in this adjudication. Several witnesses testified as to the width of the river and the general import of their testimony is that the width of the river substantially exceeds thirty feet. Appellants' main complaint is with the method of measurements used. The statute provides no precise method of

measurement for determining if a stream maintains an average width of thirty feet from the mouth up. We have found no case which absolutely mandates any certain method be used. We have concluded that the testimony in the record sufficiently supports the trial court's finding as to navigability.

## Constitutionality

Appellant raises other constitutional questions, all of which we have considered and all of which are overruled. Among other things, they contend that Section 11.-320 of the Water Code is unconstitutional and that therefore the whole Act is unconstitutional by virtue of a "self destruct" clause in Section 11.320(c). Section 11.320 provides that if any provision of this section is held invalid, the entire subchapter is null and void.

Section 11.320(a) provides that in passing on exceptions the court shall determine all issues of law and fact independently of the Commission's determination, and that the substantial evidence rule shall not be used. We have no exact standard to go by. One commentator has observed that there are three general categories of review authorized by the courts in reviewing administrative actions: (1) Minimum Review. The court does not weigh the evidence but merely looks to the record made before the agency to determine that the findings are supported by substantial evidence; (2) Intermediate Review. The court views the evidence appearing in the agency's record and independently determines the appropriateness of the finding; and (3) Maximum Review. The court ignores the agency's record and makes independent conclusions solely upon the evidence introduced before the court. Kidder, *The Methods and Nature of Judicial Review of Orders of the Oil and Gas Division of the Railroad Commission*, 33 Tex.L.Rev. 680 (1955).

The substantial evidence rule approximates type one, the pure trial de novo is type three, and the review specified by the Act appears to be similar to type two.

It is clear that the Water Rights Adjudication Act contemplates a trial of exceptions, not the final determination. Section 11.319 provides that the court shall hear any exceptions that have been filed. Section 11.320 provides that in passing on exceptions the court shall determine all issues of law and fact independently of the Commission's determination. It specifically forbids use of the substantial evidence rule, and says nothing about trial de novo. Section 11.321 provides that any exception heard by the court without a jury may be resolved on the record of evidence before the Commission, or the court may take additional evidence or direct that additional evidence be heard by the Commission.

Appellee urges that by virtue of the fact that it is the exceptions that are being heard, rather than the final determination, there exists a presumption that the determination of the Commission is valid. There are Texas cases which state that a presumption is given to administrative actions, independent of the substantial evidence rule, or the precise statutory review standard specified.

Other jurisdictions in similar situations grant a presumption of validity to the administrative agency's action. California courts for instance do not apply the substantial evidence rule, but instead the court reviews the agency's order by a writ of mandamus under what is called an "independent judgment" standard. Under this standard, the courts have the right to conduct new evidentiary hearings, but for the most part the review is confined to the record developed before the agency. Under the "independent judgment" review the court is required to independently pass on all issues of fact and law. However, the court indulges in a presumption that the agency has acted properly in this regard.

In *Drummey v. State Board of Funeral Directors and Embalmers*, 13 Cal.2d 75, 87 P.2d 848 (1939), the court was presented with the question as to what weight the court should give the findings of the Board. After consideration of the various possibilities the court stated that they could see

no escape from the conclusion that in such a proceeding the court to which the application for mandate is made must weigh the evidence and exercise its independent judgment on the facts as well as the law. The court then noted that this does not mean that the preliminary work performed by the administrative board in sifting the evidence and making its finding is wasted effort, and that the findings of the board come before the court with a strong presumption of their correctness and the burden rests on the complaining party to convince the court that the board's decision is contrary to the weight of the evidence.

We have concluded that a somewhat similar type of review as above outlined by the California courts is contemplated in the independent review provided for under the Texas Water Adjudication Act.

We overrule appellant Shelton's points of error that the provisions of Section 11.320 of the Texas Water Code are unconstitutional. We find nothing unconstitutional in the provisions of the Water Code as to the scope of review, or as applied to the claimants of water rights here.

It is apparent that Texas water law has been in a state of confusion for many years because of uncertainty associated with the existence of both riparian and appropriative rights. The Texas Water Rights Adjudication Act was passed to settle the confusion caused by the dual system. There is no doubt that the Act had some effect on the water rights of landowners. However, it is a regulation authorized by the Constitution and the police power of the State. Water rights, like other rights, are subject to such reasonable regulations as are essential to the general welfare, peace and good order of the citizens of this State, to the end that the use of water by one, however absolute and unqualified its rights thereto, shall not be injurious to the equal rights of others entitled to the equal privilege of using water from the same source. We do not agree with appellants' contentions that the rules and regulations provided for in the Texas Water Rights Adjudication Act which appellant here complains of,

are unconstitutional, or that they are unconstitutional as applied to these appellants.

We have examined and reviewed all of appellants' points of error and all are overruled. We find no reversible error. The trial court correctly concluded and held that (1) the Texas Water Rights Adjudication Act is constitutional in all regards and constitutional as applied to all claimants of water rights herein; and (2) the north fork and south fork of the Guadalupe River are navigable water courses from their mouth up to the area of any claim asserted in this adjudication.

The judgment of the trial court is affirmed.