**Joe E. SCHERO, Appellant,**

v.

**TEXAS DEPARTMENT OF WATER RESOURCES, Appellee.**

No. 6280.

Court of Appeals of Texas, Waco.

March 18, 1982.

Rehearing Denied April 8, 1982.

Darrell G. Lochte, Kerrville, for appellant.

Mark White, Atty. Gen., John W. Fainter, Jr., First Asst. Atty. Gen., Ted L. Hartley, Executive Asst. Atty. Gen., Douglas G. Caroom, Timothy L. Brown, Asst. Attys. Gen., Austin, for appellee.

## OPINION

JAMES, Justice.

This is an appeal from a final decree of the trial court which affirmed and incorporated into the judgment a Final Determination made by the Texas Water Rights Commission (hereinafter called "Commission".) The appeal is brought by Joe Schero, who as exceptor in the trial court below had challenged the final Determination of the Commission insofar as it affected his rights as landowner.

As we understand the record, Appellant's land in controversy is located in ten separate surveys, the title to eight of which surveys passed out of the State of Texas *prior to* July 1, 1895, whereas the title to the remaining two of which surveys passed out of the State *after* July 1, 1895. For the

reasons hereinafter stated, we hold that Appellant Schero had vested riparian rights to the land located in the eight surveys the title to which passed out of the State prior to July 1, 1895, unaffected by Article 16, Section 59 of the Texas Constitution, commonly called the "Conservation Amendment" and/or the Water Rights Adjudication Act of 1967, same being Sections 11.301 through 11.341 of the Water Code, Vernon's Texas Civil Statutes. With reference to Appellant's land located in the remaining two surveys, the title to which passed out of the State of Texas after July 1, 1895, we hold that said last-mentioned land is subject to the said Conservation Amendment and the Water Rights Adjudication Act. Concerning the lands located in the eight surveys above-mentioned, we reverse and render the trial court's judgment insofar as it purports to place restrictions and limitations on Appellant's vested riparian rights. Insofar as the land belonging to Appellant located in the remaining two tracts hereinabove referred to, the trial court's judgment is affirmed.

Pursuant to a statutory requirement, Appellant Schero's predecessor in title filed in 1969 a "Form For Recordation Of Certain Water Claims" with the Commission. In this form, claim was made for riparian rights in tracts of land abutting on the Llano River, for the right to use a reservoir erected on the river, and for the right to use the water for irrigation purposes. Appellant's claims were among some 246 claims which were determined in the adjudication of water rights in the Llano River Watershed. The adjudication, authorized by the terms of the Water Rights Adjudication Act of 1967, was commenced in 1976 and included public hearings, receipt of evidence, examination of engineer's reports, filing of briefs, and finally a contest hearing in March of 1978. These proceedings culminated in the Final Determination, in which the Commission ruled upon all the claims made to water rights in the Llano River Watershed. Thereafter, this Final Determination was filed in the District Court, where Appellant was the only one of 246 claimants to note his exception to the rulings. The court severed the Appellant's exceptions from the remainder of the action, and entered final judgment as to the satisfied parties. The court then considered Appellant's exceptions along with the record of the administrative proceeding; sitting without a jury, the court entered its order affirming the Final Determination as it related to Appellant's claims. Appellant then pursued his challenge by appealing the trial court's judgment. He complains here of five points of error, all of which were included in his exceptions filed with the trial court.

The Commission's determination with respect to the claims of Appellant recognized only a portion of the water rights claimed. Specifically, the determination limited the use of the waters involved to a given quantity per annum upon a limited number of acres and for a limited purpose in several of the surveys. Further, Appellant was denied riparian rights entirely in two of the surveys. Finally, the determination gave Appellant a priority date inferior to that of permit holders in the Llano River Watershed.

The action and rulings by the Commission were based upon the provisions of the Texas Water Rights Adjudication Act, found at Sections 11.301 through 11.341 of the Texas Water Code. The Act was passed pursuant to the Conservation Amendment, Art. XVI Sec. 59, Tex.Const., which provides that the conservation and development of all the natural resources of the state are public rights and duties. The Act required all persons claiming a water right of any sort, other than by permit or certified filing, to file statements of their claim in order that the Commission could evaluate them. In making the evaluations, the Commission was guided by Sec. 11.303, one of the provisions in issue here. This section required that the previously unrecorded claims be recognized only if valid under existing law and limits them to the amount of water beneficially used during the calendar years 1963–1967. The Act spells out in Sections 11.304 through 11.324 the administrative adjudication process in which notice is given

and evidentiary hearings are held on each claim. After preliminary determinations have been made, the Commission hears contests of the rulings. When a final determination has been rendered it is filed in district court along with the entire record compiled by the Commission. If an administrative re-hearing has been denied, a dissatisfied claimant must file exceptions to the determination in district court. The Act details in Sec. 11.320 the scope of judicial review in district court; it further provides that Sec. 11.320 is not severable from the others in the sub-chapter, so that any ruling against its validity will render the entire Act null and void.

Against this background, we now proceed to consider Appellant's points. Points one and three will be consolidated for discussion, as they are essentially one contention. Appellant urges this court to reverse the decision of the trial court affirming the Commission's determination because the Commission's actions amount to an unconstitutional taking of Appellant's property, and because the statutes allow an unconstitutional impairment of the State's contractual obligations. He points out that no compensation has been offered to Appellant, and since such taking cannot be justified by either the Conservation Amendment or the police powers of the State, the Commission's actions are violative of Art. I, Sec. 17 of the Texas Constitution. The prohibition against impairment of contractual obligations is found in Sec. 16 of Art. I, Texas Constitution.

At the heart of Appellant's argument is his belief that he is possessed of vested riparian rights by virtue of his land holdings and that these rights were unlawfully and effectively taken from him by the State. Appellant bases his claim of riparian rights on the fact that his land holdings were originally grants in fee simple from the State of Texas; those grants, Appellant contends, included the grant of riparian rights. The taking was accomplished when the Commission prevented the full exercise of his rights by limiting the amount of water Appellant could use, by restricting the purpose for which the water could be used, and by limiting the acreage to which irrigation water could be applied. Appellant asserts that he is entitled to use of the river water unrestricted as to quantity, purpose, or location of diversion, subject only to a reasonableness standard.

The State counters this argument with several assertions. No riparian rights were granted in lands patented after July 1, 1895, the date of the second Irrigation Act. That Act declared the unappropriated waters of Texas to be public property, thereafter subject to appropriation by the State. Acts 1895, 24th Leg.Ch. 21, Sec. 1. As to lands passing out of the State before July 1, 1895, the State makes two arguments. They first contend that riparian rights are not vested property rights in Texas; thus land granted by the State did not include what the English Common Law considered one of the property rights which passed with the land. Alternatively they argue that even if riparian rights are recognized in Texas, such right does not include a right of non-use, that is to say, a right to use of more water than that which has been put to beneficial use. Finally, it is the State's position that the constitutionality of the Water Rights Adjudication Act can be sustained under either the Conservation Amendment or the police powers provision, even if there is found to be a vested riparian right to non-use. It is asserted that both can be the basis for legitimate infringements upon private property rights.

This court is thus presented with the task of determining the extent to which riparian rights are recognized in Texas, and the extent to which those rights may be abrogated by the State. We have been aided in our consideration of these issues by the briefs of the parties, together with the opinion of the San Antonio Court of Appeals in the case of *In Re Adjudication of Upper Guadalupe River* (Tex.Civ.App. San Antonio CA 1981) 625 S.W.2d 353, wherein an application for writ of error is pending in the Supreme Court of Texas. In this last-named case the San Antonio Court of Appeals dealt with substantially all of the questions that Appellant has raised before us in the case at

bar. As will be seen, we respectfully differ from the San Antonio Court in some respects, and agree with said court in other respects.

█ We must begin with the proposition that Appellant possesses all those riparian rights incidental to fee simple ownership of his land, patents for the property having been issued without reservation or restriction on those rights. The difficulty lies in determining whether riparian rights necessarily accompanied the grants of land from the State. We initially address the question raised by the lands included in the pre 1895 grants, as separate consideration is required of those after that date due to the impact made by the aforementioned Irrigation Act of 1895. Early Texas cases contain language supportive of Appellant's assertions of riparian rights. *Fleming v. Davis*, (Tex.1872) 37 Tex. 173; *McGhee Irrigation Ditch Co. v. Hudson*, 85 Tex. 587, 22 S.W. 967. Primary reliance in the *Fleming* case was placed upon the statutory provision adopting the Common Law of England as the rule of decision in Texas where not inconsistent with the Constitution or other positive law to wit, Tex.Rev.Civ.Stat.Ann. art. 1. It is well settled that riparian rights were part and parcel of fee simple grants of land under English law. In the landmark case of *Motl v. Boyd*, (Tex.1926) 116 Tex. 82, 286 S.W. 458, the court was specifically urged to reject the riparian system in favor of the appropriative. After tracing the history of land grants of Texas and the Mexican states, the court concluded that riparian rights were granted by Texas and the Mexican states of Coahuila and Tamaulipas. The *Motl* decision was thoroughly reviewed by a Texas court of appeals in the case of *State v. Valmont Plantations*, (Tex.Civ.App. CA San Antonio 1961) 346 S.W.2d 853, opinion adopted, 163 Tex. 381, 355 S.W.2d 502 (Tex.1962). There the court believed much of the *Motl* language to be dicta, not to be considered controlling of the issue before that court. The issue in *Valmont*, however, was whether the Spanish and Mexican land grants contained appurtenant irrigation rights. The question was decided in the negative. We do not recognize the *Val-*

*mont* case as being a very helpful one in determination of the precise issue we are today deciding: whether Appellant's pre 1895 grants from the State of Texas included vested riparian rights. We conclude that they did. We are not dissuaded from this conclusion by the Appellee's argument that *Fleming* was merely a rule of decision shaped for the facts of that case. Too many cases decided subsequent to Fleming have treated the issue of riparian rights in Texas grants as settled. See *McGhee*, supra, and *Board of Water Engineers v. McKnight*, (Tex.1921) 111 Tex. 82, 229 S.W. 301. Though it was not the question presented for determination, a more recent Texas Supreme Court case seemed to recognize that there exist vested riparian rights in Texas. *Texas Water Rights Commission v. Wright*, (Tex.1971) 464 S.W.2d 642.

█ This does not conclude our inquiry, however. The State makes a forceful argument that even if riparian rights are vested property rights, a right of non-use is not included. Therefore, the argument goes, there is no abrogation of the right when the State quantifies the riparian's right based on his past use. In support of this, the State points to the strong policy against waste evidenced by the Conservation Amendment, and argues that the common Law should be applied only so far as it is not inconsistent with Texas policy. Though we are aware of the initial appeal of this argument, we cannot reconcile it with our view of the elements of riparian rights. These elements include a right to reasonable use, without waste, unrestricted as to specific quantity and not lost by non-use. It is undeniable that the Texas Water Rights Adjudication Act would forbid any use of riparian waters by a person who had not put to beneficial use such water in the years 1963–1967, even though the propsed use would be quite consistent with his vested riparian rights. Similarly, though Appellant's future uses may be well within the confines of 'reasonable use', the Commission's Final Determination would limit and restrict him to use of a certain quantity under certain conditions. Though we are

familiar with the problems inherent in administering a standard as vague as 'reasonable use', we can see no way to avoid the conclusion that a riparian's property rights are taken when the State so limits and qualifies water use.

Having decided that there has been a taking of Appellant's property rights, we are now faced with ruling on whether or not such taking was justified. We note at the outset that the situation presents a conflict between constitutional provisions. On the one hand, Appellant asserts that Art. I, Sec. 17 forbids the State from taking his vested property rights without compensation. On the other hand, the State looks to Art. III, Sec. 42 and argues that the water laws in issue were passed as proper exercises of the police power of the State. They were further justified by the terms of the Conservation Amendment, to wit, Article XVI, Sec. 59, which authorizes laws appropriate to the conservation and development of the natural resources of the State. In its brief the State cites us to a number of cases in support of its assertion that the Conservation Amendment can provide authority for legislation which regulates or limits private property rights. We have no disagreement with this as a general statement. These cases are not dispositive of the issue before this court, however, as they did not measure the constitutionality of such legislation in light of the constitutional prohibition against taking without compensation. Indeed, one such case cited by the State shows explicit recognition of this fact: *"Absent a constitutional provision prohibiting, either in express terms or by necessary implication, an act of the Legislature, that act must be held valid."* Beckendorff v. Harris-Galveston Coastal Sub. Dist., (Tex.Civ. App. CA Houston–14th 1977) 558 S.W.2d 75 at 79, writ ref'd n. r. e., 563 S.W.2d 239 (Tex.1978). (emphasis supplied).

The validity of legislation passed pursuant to the police powers of the State has been frequently weighed against the constitutional prohibition of taking without compensation. The most recent Texas Supreme Court case to address this issue was City of Austin v. Teague, (Tex.1978) 570 S.W.2d

389. There the court explained that under some circumstances one's property may not be taken without compensation even if the taking is in the exercise of the State's police power. *id.* at 391. One of the circumstances mentioned in which compensation would be required was when the taking or property loss was not common to the public. This would seem to fit the facts of this case. The Court in Teague found that a city's repeated denial of a development permit for a piece of property imposed a servitude upon the property and thus amounted to a taking without compensation. We are further guided by the holding in *Southern National Bank of Houston v. City of Austin,* (Tex.Civ.App. CA Tyler 1979) 582 S.W.2d 229, writ ref'd n. r. e. There the court found that restrictions relating to the maintenance, operation, and management of a building, imposed by virtue of its designation as 'historic', were similar to the servitude found in Teague. The ordinance upon which the restrictions were based was held unconstitutional as confiscatory. In light of the foregoing authorities, we hold that the restrictions placed on Appellant's exercise of his vested riparian rights cannot be justified by either the Conservation Amendment or as a legitimate exercise of the State's police power. Appellant's first and third points of error are sustained.

We wish to be understood as making such ruling only with respect to vested riparian rights, and only with respect to those limitations and restrictions which amount to a taking of those rights. Since riparians are restricted in their water use by the reasonableness standard, any use not conforming thereto could be prevented without violation of vested rights. The State's strong policy against waste of water would most assuredly have significant weight in any determination of the reasonableness of water use.

We now turn to consideration of the questions raised by the land whose patents passed out of the State *after* July 1, 1895. The Appellant makes three arguments for the proposition that the Commission erred

in denying him any riparian rights in these tracts, in his point of error No. 2. One such argument is based on the fact that the grants in question were from lands dedicated before 1895 to the Perpetual School Fund. Therefore, Appellant reasons, riparian rights had already attached to the land at the time it was dedicated and continued with the land as it was granted to individuals. He cites in support of this argument the case of *Hogue v. Baker*, (Tex.1898) 92 Tex. 58, 45 S.W. 1004, in which it was held that there was no public domain remaining in Texas in 1895. We do not believe this holding to be relevant to the issues involved here, as the question in the *Hogue* case was whether certain State lands were available for homestead. Rather, we believe the Supreme Court's holding in *Greene v. Robison*, (Tex.1919) 109 Tex. 367, 210 S.W. 498, to be the applicable rule, as it was there stated that the Perpetual School Fund acquired no title as against the State by mere dedication of the land. This disposes of the Appellant's argument here, as it is clear that title to the land passed out of the State *after* July 1, 1895 and not at the time of dedication.

■ Appellant also attempts to invoke the aid of Natural Resources Code Art. 51.084, V.T.C.A., to show that the Commission's actions with respect to the land derived from post 1895 patents were not authorized. Natural Resources Code Art. 51.-084 provides as follows: "No sale made without condition of settlement may be questioned by the State or any person after one year from the date of sale." On this point we are in agreement with the State, that this statute cannot be the basis for preventing any and all interference by the State with the property rights of landowners. The statute was not intended to be so utilized, and we cannot sanction its application in this case. We believe that this conclusion is supported by the holdings in *McCombs v. McKaughan*, (Tex.Civ.App., CA Beaumont 1946) 195 S.W.2d 194, writ ref'd., and *Ashby v. Ringstaff*, (Tex.Civ.App., CA Austin 1971) 464 S.W.2d 891, writ ref'd. n. r. e. Also see *In Re Adjudication of Upper Guadalupe River* (Tex.Civ.App. San Antonio CA 1981) 625 S.W.2d 353 at page 362.

■ The Commission's actions in denying Appellant riparian waters (concerning Appellant's lands the title to which passed out of the State after July 1, 1895) have ample support in the case law construing the effect of the 1895 legislation. *Knight v. Oldham*, (Tex.Civ.App. CA El Paso 1919) 210 S.W. 567, writ ref'd. *Motl v. Boyd*, supra. Since lands patented after July 1, 1895 did not include the grant of riparian rights, the Commission was justified in declaring that Appellant had no such rights. It follows that the Commission did not err in denying Appellant riparian rights in those tracts, and his point of error No. 2 is overruled.

■ In his fourth point of error Appellant asserts that the trial court erred in affirming the Final Determination for the reason that the provisions of Water Code Sec. 11.320 (Scope of Judicial Review) are void for want of constitutionality, and that deficiency renders the entirety of the Water Rights Adjudication Act void by virtue of Sec. 11.320's non-severability clause.

Water Code Sec. 11.320(a) provides as follows:

"In passing on exceptions, the court shall determine all issues of law and fact independently of the commission's determination. The substantial evidence rule shall not be used . . . ."

. We find nothing unconstitutional in the provisions of the Water Code as to the scope of review, or as applied to the claims of Appellant Schero in the case at bar. See *In Re Adjudication of the Upper Guadalupe River* (Tex.Civ.App. San Antonio CA 1981) 625 S.W.2d 353, 363. Appellant's fourth point of error is overruled.

In his fifth point of error Appellant contends that the Texas Water Rights Adjudication Act violates the separation of powers provisions of the Constitution in two respects: by conferring judicial duties upon an administrative body and by authorizing the district court to perform executive functions.

■ As was noted earlier in this opinion, the Act does authorize the Water Commis-

sion to perform some functions that are adjudicatory in nature. This fact does not render the statute unconstitutional. The Texas Supreme Court's holding in *Corzelius v. Harrell*, (Tex.1945) 143 Tex. 509, 186 S.W.2d 961, made it clear that the Conservation Amendment can be the basis for assigning adjudicatory functions to an administrative agency, so long as there are provisions for court review of those administrative actions. Sec. 11.317 et seq. of the Act provides that review, and the constitutional separation of powers provisions are no bar to this system of adjudication.

■ Appellant also charges that the act is violative of the separation of powers provisions because it authorizes the district court to perform executive functions. He points out that the role of the district court under the Adjudication Act is neither appellate nor original, and argues that it necessarily follows that the court has been made into merely another step in the administrative process. We do not agree. Though the terms of the Adjudication Act provide that the Commission's Final Determination be 'filed' in a district court, this does not prevent the court from being in the position of a reviewing court; its role is essentially appellate. Appellant fails to specify what administrative functions are assigned to the district court, and our search of the statutes turns up none. The role of the district court in the Texas Water Rights Adjudication Act is not forbidden by the constitutional provisions requiring separation of powers. Appellant's fifth point of error is overruled.

Since we have held that Sec. 11.303 of the Texas Water Rights Adjudication Act has been applied so as to authorize unconstitutional restrictions on the exercise of vested property rights, we reverse and render the decision of the district court insofar as it approves those restrictions concerning the Appellant's lands located in the eight surveys, the title to which passed out of the State prior to July 1, 1895. In all other respects the trial court's judgment is affirmed.

AFFIRMED IN PART AND RE-VERSED AND RENDERED IN PART.